### SLOAN FILTER CO. v. EL PASO REDUCTION CO.

(Circuit Court, D. Colorado. July 10, 1902.)

#### No. 3,746.

1. PATENTS—SUIT FOR INFRINGEMENT—RIGHT OF OTHER USERS TO INSPECT RECORD.

A user of machines claimed to infringe a patent has such an interest in the subject-matter of a suit between other parties in which the validity of such patent is in issue as entitles him, on proper application, to inspect and to have a copy of the record in such suit, including the evidence on file; and the parties will not be permitted by a collusive stipulation, made on a settlement and dismissal of the suit, to withdraw the evidence from the record for the purpose of defeating such right of inspection.

In Equity. Suit for infringement of patent. On motion for dismissal by stipulation and for leave to withdraw evidence from record.

C. M. Bliss and Edward Kent, for complainants.

W. L. Hartman, for respondents.

Thomas, Bryant & Lee, for petitioner.

HALLETT, District Judge. This suit was brought May 3, 1898, to restrain infringement of patent No. 587,874, for an improvement in barrel filters. The cause was ripe for hearing in April last, when the parties filed in the cause a stipulation for dismissing it, which contained, among other provisions, the following:

"(3) That the testimony and exhibits taken and on file in the office of the clerk of this court may be withdrawn from the files and record by the complainant."

¶ 1. Access to public records, see note to Bell v. Trust Co., 49 C. C. A. 210.

At or before the filing of the stipulation the Portland Gold Mining Company, through its solicitor, applied to a judge of the court for a copy of the testimony taken in the cause, and all consideration of the stipulation was postponed to the May term, then approaching, in order to give an opportunity for full hearing of the subject. May 13th last the Portland Company filed a petition of some length, in which it asks for a copy of the testimony. The petition can be briefly stated as follows: Petitioner owns and operates mines in Cripple Creek mining district, and it has become expedient and necessary to erect a mill for treating the ores obtained from its mines by the "process of chlorination." Construction of the mill was begun in the year 1901, and it would be completed in June, 1902, and would have a capacity of 300 tons of ore per day. Twelve barrel filters of specified dimensions would be put in the mill, and they are of the class described in the bill of complaint in this cause, and in the patent No. 587,874, which complainant claims to own.

The issues raised in the cause relate to the novelty of the invention and the validity of the patent. When this suit was begun, and at the time of taking testimony therein, "a considerable number of firms and corporations" were engaged in treating ores "by the said process of chlorination, and also by the use of cyanides," and there was a good market for low-grade gold-bearing ores in the Cripple Creek district. The persons, firms, and corporations so engaged in reducing ores have formed an organization called the United States Reduction & Refining Company, with the purpose to create a monopoly and control the price of ores in Cripple Creek district. Petitioner will be compelled to sell its ores for such price as the United States Reduction & Refining Company may be willing to pay, if hindered or prevented from building its mill. A large volume of testimony for and against the patent has been taken in the suit, and is or ought to be now on file in the cause. The parties mentioned in the petition, including the parties to this suit, have combined and confederated—

"To secure the settlement and dismissal of this suit, and the withdrawal and the suppression of the testimony against the said patent, to the end that when your petitioner is ready to operate its said mill they may apply to this honorable court and other courts to enjoin your petitioner from the use of the said alleged patent, to sue it for alleged damages for infringement, etc., and thereby embarrass, interfere with, and, if possible, wholly prevent, the operation of its said mill, compelling it to send its product of low-grade ore to the said reduction company, and making its investment in and for said mill a profitless expense, if not an entire loss, to your petitioner and its stockholders.

"(14) That, pursuant to said purpose and intention of the said parties hereinbefore mentioned, they did, after the filing of said report, in so far far as your petitioner is informed and believes, secure, by purchase or otherwise, the capital stock of the said Sloan Filter Company, and made a settlement or adjustment of said controversy of some sort, the details whereof are to your petitioner unknown, whereby the papers in said cause are to be withdrawn, together with the master's report of the testimony aforesaid.

"(15) That in furtherance of the said plan, purpose, and intention of the parties aforesaid they, the said MacNeill, Penrose, Tutt, Hawkins, and Hartman, did, within the past two weeks, organize a certain corporation under the laws of the state of Colorado, with themselves as incorporators, and called the Chlorination & Patents Company, the alleged purpose whereof is to deal in and operate patented processes for the treatment of ores by chlorination,

etc.; and that the said company so organized, as your petitioner is informed and believes, and consisting of the persons aforesaid, is now the reputed and alleged owner of the said pretended Sloan filter, and all patents of said Sloan relating thereto, the validity of which depends largely upon the suppression of the testimony heretofore given in this cause of the said MacNeill, J. D. Hawkins, and others, given in behalf of the defendant above named under the examination of the said Hartman, and against the validity of the said patent.

"(16) Your petitioner further alleges that the said Chlorination & Patents Company, so called, is a pretext only, and was created and organized for the sole purpose, as your petitioner believes, of being used as a medium for the said United States Reduction & Refining Company, to secure the control of patented processes, and particularly of the said Sloan filter process, that it might be utilized to endanger or destroy the mill of your petitioner, and to crush opposition, and discourage and prevent the building or erection of other mills coming into competition with its monopoly, notwithstanding the fact that many of the mills now belong to said United States Reduction & Refining Company, but formerly operated as independent concerns, used said filtrating process from time to time, and for a long time prior to the organization of the United States Company, without interference, hindrance, or protest from any source."

May 13th last complainant filed a motion to dismiss and strike off the petition upon 13 grounds, which need not be recited at length. The most plausible reasons assigned are that the Portland Company is a stranger to the suit, and the testimony taken in the cause belongs to and is entirely under the control of the parties. Of course, the motion, like a demurrer, admits the facts alleged in the petition to show the interest of the Portland Company in the subject-matter of the suit. So understood, the interest of the Portland Company in the result of the suit and the testimony taken therein is fully shown. A machine in general use in the art of treating ores is said to be the subject of a patent from the government, and the validity of that patent is denied. No argument is needed to show that every one engaged in the business is interested in a controversy of that kind.

Another consideration seems to support the petitioner's position. In administering patent law, courts constantly refuse to re-examine questions which have been fully and fairly investigated in other suits. A patent right once established upon full inquiry is thereafter impregnable to the assaults of others who claim in the same way and to the same extent as the defendant in the first suit affecting such right. Under this rule all persons using a device are in some sense parties to a suit in which the validity of such device may be challenged or denied. If strangers to the suit can be in any manner or to any extent bound by the result, they ought to be at liberty to inquire how the controversy is carried on. At the bar it was said that this petition is without precedent. This may be true in respect to the circumstances of this case, but the matter of inspecting and taking copies of public records is as old in the law as the records are old. In English law, tenants of a manor could always inspect the court rolls and books of the manor in order to ascertain their titles. Rex v. Shelley, 3 Term R. 141. So, also, where the authority of a mayor was in question, citizens could inspect the books and papers of the borough in order to determine the fact. Rex v. Babb, 3 Term R. 579. These cases and others support the common-law rule that a party may have inspection of any docu-

ment or paper in which he may be interested. 1 Whart. Ev. par. 745. In American reports cases may be found to the same effect. Ferry v. Williams, 41 N. J. Law, 333, 32 Am. Rep. 219. A federal statute (Rev. St. § 828) on this subject seems to be applicable only to the judgments and decrees of federal courts. In re Chambers (C. C.) 44 Fed. 786; Trust Co. v. Bell (C. C.) 87 Fed. 19. Similar statutes are found in some of the states. State v. Rachac, 37 Minn. 372, 35 N. W. 7; Hanson v. Eichstaedt, 69 Wis. 538, 35 N. W. 30; Lum v. McCarty, 39 N. J. Law, 287; Newton v. Fisher, 98 N. C. 20, 3 S. E. 822. No statute is required, however, to support the petitioner's application. He is fairly within the common-law rule as one who has an interest in the subject, and therefore a right to inspect public documents affecting his interest. The petitioner is not an intermeddler in other people's affairs, nor is its application against public policy, as was the case in Re Caswell (R. I.) 29 Atl. 259, 27 L. R. A. 82, 49 Am. St. Rep. 814. The petitioner seeks only to protect itself in respect to the matter in controversy in this cause, and for that purpose it may rightfully invoke the aid of the law to obtain a copy of the testimony and documents on file.

The stipulation to dismiss will be recognized, but the application of complainant to withdraw from the files the testimony taken in the case is denied.