THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARIA STEN-
STROM, as Administratrix, etc., of EDWARD S. STENSTROM,
Deceased, Respondent, *v.* CHARLES A. HARNETT, Commissioner
of the Bureau of Motor Vehicles of the State of New York,
Appellant.*

Third Department, June 22, 1928.

* Affg. 131 Misc. 75; affd., 249 N. Y. 606.

*Albert Ottinger, Attorney-General* [*John H. Machan, Deputy Assistant Attorney-General,* of counsel], for the appellant.

*Thomas J. O' Neill* [*Charles D. Lewis* of counsel], for the respondent.

VAN KIRK, P. J. The mandamus order directed the appellant, Charles A. Harnett, Commissioner of the Bureau of Motor Vehicles, to permit the relator, or her attorney, to inspect all the reports in his possession regarding a certain automobile accident in which Edward S. Stenstrom was killed January 21, 1926; also to furnish transcripts of said reports on payment of the fees allowed.

As was the practice in the Bureau, the Commissioner had replied to relator's request for leave to inspect the reports and for transcripts, asked by letter, informing her of the time, date and place of the accident; the names and addresses of the persons involved in the accident; the name of the police officer or precinct submitting a report thereof and such information as was deemed essential to enable her to make investigation thereof; but refused to comply further because these reports were confidential and solely for the use of the Motor Vehicle Department. The relator, administratrix, insists that the reports are necessary to enable her to prepare for the trial of the action she has brought to recover damages for the death of Edward S. Stenstrom.

Section 66 of the Public Officers Law provides: " A person, having the custody of the records or other papers in a public office, within the State, must, upon request, and upon payment of, or offer to pay, the fees allowed by law, * * * diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found." The office of Commissioner and the Bureau of Motor Vehicles were created by chapter 360 of the Laws of 1924 (adding to Highway Law, § 280, repealed in 1927). The Bureau of Motor Vehicles is a part of the Department of Taxation and Finance of the State. Its head is

the Commissioner of Motor Vehicles, who has full charge, subject to the direction and control of the Commissioner of Taxation and Finance. (Highway Law, § 280, as added by Laws of 1927, chap. 458, in effect March 31, 1927.) Thus this Bureau is "a public office, within the State," and the Commissioner is "a person, having the custody of the records or other papers" therein. Reports of the accident in question here were filed in the Bureau of Motor Vehicles as required by section 299-a of the Highway Law (as added by Laws of 1924, chap. 360). Upon the request made it was, therefore, the Commissioner's duty to make a transcript of these reports and certify its correctness. Section 299-a (as added by Laws of 1924, chap. 360) does not indicate whether or not these records are public papers or intended solely for use in the Bureau of Motor Vehicles, and section 66 of the Public Officers Law does not in any wise specify those who are or are not entitled to these transcripts.

The Commissioner contends that to permit disclosure of these confidential accident reports is contrary to public policy and in his argument urges that, if the statute requires such disclosure to be made, it may be used against the person who made the report and thus compel that person to be a witness against himself in a criminal action; this would offend against article 1, section 6, of the Constitution.

In our view the statutes above cited fully cover the case and justify the mandamus order. The record does not disclose that any person who reported concerning the accident in this case protested against making a written report on the ground that a statement might tend to incriminate him, or on any ground. So that the question is not here whether a report should have been required, but only whether a transcript thereof may be required. No person who made a report is objecting; it is solely the Commissioner and whatever is contained in the report cannot incriminate him. It is only when the transcript is offered in evidence that the person making the report would have reason to claim his privilege to refuse to answer; and this right could not be prejudiced by the fact that a transcript of his report had been issued. Under section 382 of the Civil Practice Act, a copy of a paper filed or kept in a public office of the State can only be used in evidence when it is certified by the officer having the custody of the original, or by his deputy or duly authorized clerk, and his official seal is attached under his hand. When so certified and sealed the copy is evidence as if the original was produced. It does not appear that the certificate required here complies with this section; it does not appear whether the Commissioner, or his superior, has an official seal; the mandamus order does not require an official seal

to be attached to the transcript which is ordered to be issued; and further, if the paper were executed so that it could be received in evidence, it would only be the equivalent of the original, and this could be procured for use in court by a *subpœna duces tecum.* When the original or a transcript thereof is offered in evidence a party who might be put in jeopardy if it were received, could claim his privilege and it would be for the court to say whether or not the evidence was admissible. Then the constitutional question would be raised. We think the Commissioner is not an interested party upon this question; that the constitutionality of section 299-a is not presented here. One who challenges the validity of a statute on the ground that it violates some clause of the Constitution must show that he will be affected unfavorably if the statute is upheld. The courts are not disposed to declare a statute unconstitutional until a case is presented which requires its action. The actual, not the theoretical, that which is, not that which might be, moves the courts to action. (*Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50, 54.) Chief Judge Cullen said of the statute: " The primary object of the statute, in my judgment, is not to convict any person of crime, but to subject him to civil liability." (*People* v. *Rosenheimer,* 209 N. Y. 115, 123; dissenting opinion in same case, 146 App. Div. 875.) This transcript was needed for that purpose. Upon this record we hold that the mandamus order requires no act in conflict with public policy.

While it may be, as claimed by the respondent, that constant application for such transcripts may impose a burden upon the Bureau, this cannot have consideration in determining the question here; nor can the fact that the Commissioner gave to relator by letter the information concerning the accident which he deemed sufficient. The fact remains that the relator is given by the statute the privileges she asks and she has an interest therein. The Commissioner, a State officer, has no antagonistic interest, and might well comply with rather than resist the apparent direction of the statute. " Every officer appointed by law to keep records ought to deem himself for that purpose a trustee." (See discussion, *Matter of Egan,* 205 N. Y. 147.) If the State finds the rules it has laid down occasion too heavy a burden of inconvenience or expense, the Legislature will lighten it.

We have examined the authorities cited by the appellant and find none which conflict with these views.

The order should be affirmed, with costs.

Hinman, Davis, Whitmyer and Hasbrouck, JJ., concur.

Order affirmed, with costs.