In the Matter of the Application of RALPH C. TOBIN and Others, Constituting the Board of Trustees of the Seventh Regiment Armory Building in the City of New York, Petitioners, for an Order against FIORELLO H. LAGUARDIA, as Mayor, and Others, Constituting the Board of Estimate of the City of New York, Respondents.*

Supreme Court, Special Term, New York County, April 27, 1942.

*Loucks, O'Ryan & Cullen* [*John F. O'Ryan* and *Charles H. George* of counsel], for the petitioners.

*William C. Chanler, Corporation Counsel* [*Seymour B. Quel* and *Hortense M. Wittstein* of counsel], for the respondents.

SHIENTAG, J. . This is an application for an order under article 78 of the Civil Practice Act by the Board of Trustees of the Seventh Regiment Armory Building to compel payment by the city of New York of $22,916.35, together with interest since September 1, 1941. The petitioners' claim is the outgrowth of protracted litigation between the contesting parties which terminated in 1940 in the petitioners' favor, and it represents the legal fees and disbursements paid by the petitioners in the several proceedings. As a result of the earlier proceedings the city of New York was

* Affd., 264 App. Div. 848.

required to make certain yearly payments to the petitioners for care and maintenance of the Seventh Regiment Armory Building.

Chapter 573 of the Laws of 1941 added section 70-a to the General Municipal Law and is the basis of petitioners' present proceeding. It provides as follows:

" § 70-a. Liability for expenses incurred in enforcing lawful required payment of moneys to State agencies. Notwithstanding any inconsistent provision of this chapter or of any law, general, special or local, whenever any municipal corporation is required by law to provide and pay any moneys to a corporate or other agency or instrumentality of the State for a public purpose, any reasonable expenses necessarily incurred by such an agency or instrumentality in compelling or enforcing by judicial proceeding payment to it of such moneys shall be a charge against such municipal corporation and such municipal corporation shall be liable therefor and shall pay the amount thereof upon certification and approval by the Attorney-General, to such agency or instrumentality, provided vouchers therefor, properly certified and approved as required by this section, shall be presented to and filed with the chief fiscal officer of the municipal corporation within six months after final determination of such judicial proceedings in the case of any such expenses hereafter incurred, and in the case of any such expenses heretofore incurred within six months after this section as hereby added takes effect. The provisions of this section shall apply to and in the case of such expenses heretofore incurred subsequent to January first, nineteen hundred thirty-two, by such a State agency or instrumentality."

After the enactment of this statute the petitioners presented their claim for reimbursement to the Attorney-General together with data setting forth the facts called for by the statute and showing the reasonableness of the expenses incurred by them in enforcing their rights against the respondents. The Attorney-General signed a statement that he had examined the claim and stated therein that " I further certify that, in my opinion, the attached claim and vouchers represent the reasonable expenses necessarily incurred by said Board of Trustees in compelling or enforcing, by judicial proceeding, payment of the moneys required by law to be paid to it for a public purpose, as described in said claim, and I hereby approve said claim and its payment."

The petitioners filed the Attorney-General's statement with the city comptroller, together with copies of the exhibits submitted in support of their claim. The comptroller then requested the petitioners to itemize the legal services rendered in order to permit an audit of the claim, but the petitioners refused on the ground

that the comptroller had no right to audit the claim and that the city was bound by the action of the Attorney-General to pay the full amount of the claim. The refusal of the city to accede to the demands of the petitioners resulted in the institution of this proceeding for an order in the nature of a mandamus.

An examination of the statutory provision in question leads to the conclusion that the words " such municipal corporation shall be liable therefor and shall pay the amount thereof upon certification and approval by the Attorney-General, to such agency " were intended to impose a condition which a claimant must satisfy before submitting its claim to the city, and were not intended to impose any limitation or disability upon the city's right to audit the claim or contest the reasonableness of the amount thereof. The rationale of this provision becomes apparent when it is remembered that the Attorney-General acts as counsel for most State agencies and instrumentalities and is in a position to pass on the necessity of the expenditures by these agencies during the course of litigation.

In the instant case the Attorney-General refused to represent the petitioners in their litigation against the city on the ground that it was the established policy of his office not to act as counsel to boards of trustees of the character of the petitioners, and on the further ground that the staff of his office was inadequate to meet such demands. Nevertheless, the Attorney-General would be well qualified to give an opinion on the necessity of the petitioners' legal expenditures, and his views as to their reasonableness.

A similar provision in the Executive Law was considered in *People ex rel. Rand* v. *Craig* (231 N. Y. 216). Subdivision 2 of section 62 of the Executive Law directs the Attorney-General, upon the order of the Governor, to attend the Supreme Court and supersede the local prosecutor and provides that " In all such cases all expenses incurred by the Attorney-General, including the salary or other compensation of all deputies employed, shall be a county charge." Section 61 empowers the Attorney-General to appoint such deputies as he may deem necessary " and fix their compensation, within amounts appropriated therefor by the Legislature." The Attorney-General was ordered to attend at a term of the Supreme Court in the county of New York and he appointed a special deputy to conduct the prosecutions then pending. The special deputy filed with the comptroller of the city of New York a claim, approved by the Attorney-General, in the amount of $15,000, as the alleged value of his services. The comptroller asserted that the claim was subject to audit and the claimant took the position that under section 61 the approval of the Attorney-General made payment

of the claim mandatory. The court ruled that the compensation fixed by the Attorney-General was subject to audit; that the result would probably have been the same even if section 61 had ended after the words " fix their compensation; " that " the Legislature had no trouble in finding fitting phrases when it wished the agents of the State to be unhampered by the restrictions of an audit; " and that only " clear warrant of law will justify the assumption of a power to control the public purse."

Thus, as pointed out by the court in the *Rand* case, in situations where it was intended to give no right of audit to a municipality it was specifically provided that " such disbursements shall be subject to no audit except by the Governor and the Attorney-General." If the Legislature had intended to deprive the city of the right of audit under the section we are considering, it should have specifically provided to that effect. Such a limitation will not be read into the statute by inference. (See *Stetler* v. *McFarlane*, 230 N. Y. 400, 408. See, also, *People ex rel. Manley* v. *Craig*, 231 id. 574; *People ex rel. Smyth* v. *Craig*, Id. 575.)

The administrative duty conferred upon the Attorney-General of certifying bills for legal expenses is entirely consistent with the general practice of having the final audit made by the comptroller. (*People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70, 75.) The Attorney-General is not a fiscal officer and the *ex parte* consideration which he is to give to claims under the statute is not calculated to render adequate protection to the public purse. The provision we are interpreting is not to be confused with a provision conferring jurisdiction upon a board of claims or a court of claims to hear and determine all the facts and make a binding award. (See *Williamsburgh Savings Bank* v. *State of New York*, 243 N. Y. 231; *Masters* v. *Eclectic Life Insurance Co.*, 215 App. Div. 424.)

Therefore, the petitioners, after having obtained the certificate of the Attorney-General, must submit their claim for reimbursement under section 70-a of the General Municipal Law to the city comptroller for audit, and it is his duty to determine the reasonableness of the claim. Since the audit of an account involves a judicial function requiring the exercise of the comptroller's official judgment and discretion, in no event will a proceeding in the nature of mandamus lie to compel payment of the claim. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26; *People ex rel. Grannis* v. *Roberts*, 163 id. 70, 78.) If the parties are unable to agree upon the reasonableness of the claim, the petitioners' remedy lies in an action at law.

This court has not considered the questions of the constitutionality of the statute here involved and its application to the petitioners, since a ruling on these questions is not necessary for the determination of this case. (*People ex rel. Rayland Realty Co., Inc.,* v. *Fagan,* 194 App. Div. 185, 187; affd., 230 N. Y. 653; *People ex rel. Stenstrom* v. *Harnett,* 224 App. Div. 127, 130; affd., 249 N. Y. 606; *Schieffelin* v. *Goldsmith,* 253 id. 243, 250.)

The application is denied and the petition is dismissed. Settle order.