45 C.C.P.A.(Patents)

**In re Motion of Ellsworth H. MOSHER.**

United States Court of Customs
and Patent Appeals.
Oct. 17, 1957.

Ellsworth H. Mosher, Washington, D. C., pro se.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH and JACKSON, retired, Judges.

PER CURIAM.

Petitioner has moved the "full court" under Rule 12 for an order directing the clerk of the court to provide photostatic or other copies of the decision or decisions of the Patent Office Board of Appeals as set forth in the Transcript of Record that was filed in a patent appeal before this court. The motion is in proper form and is accompanied by the fee required by the Rules of this court for the making of the copies.

The appeal in question is presently pending before this court and has not yet been heard. Petitioner is not a party to the appeal nor has he alleged any special interest therein.

Petitioner originally informally requested of the clerk the copies herein sought, but was refused.

The Solicitor of the Patent Office has been advised of the instant motion but has presented no comments for our consideration.

Rule 1(1) of this court provides in part:

"* * * *The parties interested* in any matter pending before the court may have full access to the records in such matters in the office of the clerk and may take copies of all papers filed therein: * * *" (Emphasis added.)

Rule 1(3) of this court provides:

"The clerk shall furnish to *any applicant* a copy of any paper on file in any case on payment of the legal fees therefor." (Emphasis added.)

Petitioner urges that unless the words "any applicant" in Rule 1(3) be construed to have a meaning broader and different from the words "the parties," it would follow that Rule 1(3) is completely superfluous, a result repugnant to basic principles of the rules of construction. In further support of his position, petitioner cites and discusses, amongst others, the cases of Ex parte Drawbaugh, 1894, 2 App.D.C. 404 and In re Sackett, 136 F.2d 248, 30 C.C.P.A., Patents, 1214.

After careful consideration of the authorities and the arguments advanced by petitioner, we are of the opinion that his motion must be *granted.*

Rules 1(1) and 1(3), when read together (as we feel they must be read), are unfortunately not free from ambiguity. No doubt many plausible contrary arguments might be advanced as to the intended meanings of the words "the parties interested" [Rule 1(1)] and "any applicant" [Rule 1(3)]. We are constrained to admit that we have had difficulty reconciling the two rules and avoiding interpretations which render the wording of one or the other superfluous. We have attempted, however, to arrive at the interpretation closest to what we feel was the result intended by the framers of the rules.

Rule 1 of the Rules of the Court of Customs Appeals (the predecessor of this court in customs jurisdiction), as amended on December 2, 1916, and as corrected to July 1, 1923, contained a provision identical to the portion of Rule 1(1) of the current rules of this court quoted supra. No provision equivalent to Rule 1(3) appeared in the former. It was not until February 28, 1931, when rules governing the then recently constituted Court of Customs and Patent Appeals were promulgated, that Rule 1(3) appeared, in words identical to those now used. This rule is a substantial duplicate of a similar rule (Rule XIX, par. 5) in force at the time of the Drawbaugh case, supra, in the Court of Appeals of the District of Columbia, the predecessor of this court in patent jurisdiction. The only significant change made by this court in adopting this rule was that, while the rule as it existed in the Court of Appeals applied exclusively to patent appeals, the rule of this court applies to both customs and patent appeals.

In the Drawbaugh case, the Court of Appeals denied a motion, filed by the appellant therein *before* decision on the merits of the case (as in the instant case), requesting that the files in the appeal be preserved in secrecy and that the clerk be directed not to permit the files or any part thereof to be inspected or copied.

The court stated in part as follows:

"The transcript is brought here to obtain a review of a judgment already rendered by a public tribunal, and the transcript of the record of appeal and the papers and documents pertaining thereto, upon being filed with the clerk, become public judicial records of this court and must be so treated.

"* * * * *

"Such claims of right [to inspect and make copies] and contests over them are not the ordinary incidents

of judicial proceeding, and any attempt to maintain secrecy over the records of the court would seem to be inconsistent with the common understanding of what belongs to a public court of record, *to which all persons have the right of access, and to its records, according to long-established usage and practice."* (Emphasis added.)

It will be noted that, while the question of whether or not it was necessary that the party seeking access to the court records have a direct or substantial interest in the records was not at issue in the case, the court used language indicating the negative of this question. The court was clearly of the opinion that *all persons*, regardless of a showing of special interest, had access thereto. The fact that the italicized portion of its opinion so closely resembles the wording of a case cited by the court (Brewer v. Watson, 1881, 71 Ala. 299, in which it was stated that no interest need be shown where it is desired to obtain access to judicial records) is confirmatory of this conclusion. The reasoning of the Drawbaugh case was subsequently adopted in the Sackett case, supra, decided by this court on a set of facts similar to those in the Drawbaugh case except that the motion to seal the record was made after the court's decision on the merits had been rendered.

In the Sackett case, this court stated [136 F.2d 249]:

"Distinction has long been made between the requirements of secrecy relating to judicial records and those which are merely official records. Distinction has also been made in some cases between the right to inspect judicial records before trial and the right to inspect the record of the court after trial. *We know of no authority which would warrant a court such as this one in making an order denying public inspection of its records in a case like the one at bar."* (Emphasis added.)

While the language quoted above is not as broad as that used in the Drawbaugh case, it certainly is inconsistent with a narrow interpretation of the words "any applicant."

Thus in two cases, one decided by this court and the other by the predecessor of this court in patent jurisdiction, in each of which a substantially identical rule was involved, the courts ascribed a broad meaning to the phrase "any applicant."

Such an interpretation is consistent with what we feel to be the majority and better rule at common law in regard to judicial records. In Excise Commission of Citronelle v. State ex rel. Skinner, 179 Ala. 654, 60 So. 812, 813, the Supreme Court of Alabama distinguished between records other than judicial, in which no absolute right of inspection or access existed, and judicial records. Of the latter, the court said:

"An inspection of the records of judicial proceedings, kept in the courts of the country, is held to be the right of any citizen. * * *"

See also Brewer v. Watson, 61 Ala. 310. In Brewer v. Watson, 71 Ala. 299, the court stated:

"* * * And the individual who claims access to public records and documents (*not judicial records, of which, by statute and unvarying usage, the custodian, upon payment of the fee allowed by law, is bound to furnish copies*) can properly be required to show that he has an interest in the document which is sought and that the inspection is for a legitimate purpose. * * *" (Emphasis added.)

And see People ex rel. Stenstrom v. Harnett, 131 Misc. 75, 226 N.Y.S. 338, affirmed 224 App.Div. 127, 230 N.Y.S. 28, affirmed 249 N.Y. 606, 164 N.E. 602. But see contra Re McLean, Fed.Cas.No. 8877, 8 Rep. 813.

Thus it is clear that at common law, no special interest had to be shown for a member of the public to gain access to judicial records, at least as far as a majority of the courts were concerned.

Access to such records was held to be an unqualified matter of right.[1]

In view of the interpretation made by the courts in the Drawbaugh and Sackett cases, supra, and in view of the well established rule that while statutes in derogation of the common law right of inspection should be strictly construed, Mulford v. Davey, 64 Nev. 506, 186 P.2d 360, 175 A.L.R. 1255, statutes conferring the right to inspect or use public records should be liberally construed in favor of inspection, Sosa v. Lincoln Hospital of City of New York, 190 Misc. 448, 74 N.Y.S.2d 184, affirmed 77 N.Y.S.2d 138, 273 App.Div. 852; Birenbaum v. Carey, 175 Misc. 351, 22 N.Y.S. 2d 722, (in view of the fact that the rules of this court have the force and effect of law, we are of the opinion that the foregoing rules of construction should apply to them with equal force as they do to statutes) we are of the opinion that the words "any applicant" in Rule 1(3) refer to any member of the public who *applies* to the clerk, viz.: they are equivalent to *"any person."*

The reasoning in the Drawbaugh case, supra, makes it evident that it is immaterial to the decision of a case such as this that the case has not yet been heard by the court.

As aforesaid, Rule 1(3) must be read in the light of Rule 1(1). Any reasonable interpretation of Rule 1(1) would hold it to be coextensive with Rule 1(3), for it would be somewhat ludicrous to hold, under the former, that only actual parties litigant to the suit (or, at best, parties showing some special interest in the records) may have access to any copy of the records whereas any person might apply to the clerk to have him take positive action to furnish a copy of any desired paper on file in a given case.

For the foregoing reasons, the motion of petitioner is granted. He will be assessed in accordance with the provisions of Rule 5.

Motion granted.

---

1. We are not unmindful of the fact that in isolated cases, reason may appear for the invocation of a secrecy order, such as in an atomic energy case decided by the District Court of the District of Columbia, discussed in a news article in the Washington Post for Saturday, April 20, 1957, at page 3. However, no such reason appears in this case.