**WASHINGTON LEGAL FOUNDATION,**
Appellant

v.

**UNITED STATES SENTENCING
COMMISSION, et al.,**
Appellees.

No. 94–5334.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 5, 1995.

Decided July 30, 1996.

Paul D. Kamenar, argued the cause for appellant, with whom Daniel J. Popeo, was on the briefs.

Jennifer H. Zacks, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for appellees, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Mark B. Stern, Attorney, U.S. Department of Justice, were on the brief.

Before: BUCKLEY, GINSBURG, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Supreme Court has stated approvingly that "the courts of this country recognize a general right to inspect and copy public records and documents." *Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). At least as it applies to the federal government, however, the reach of this common law right is far from clear. This case poses the question whether certain documents compiled or created by an advisory committee established by

the United States Sentencing Commission are "public records" to which the public has a conditional right of access under the common law. With such guidance as we can glean from state common law and the few federal cases that have come before, we conclude that the documents are not public records.

## I. Background

In early 1992 the Sentencing Commission established an Advisory Working Group on Environmental Sanctions made up of individuals from both the public and private sectors. The Advisory Group's mission was to develop and recommend to the Commission proposed sentencing guidelines.

Although some of the early meetings of the Advisory Group were open to the public, in June 1992 the group announced that until it completed a draft of its recommendations it would conduct its meetings in private. In March 1993 the Advisory Group released a draft report recommending a new set of sentencing guidelines for environmental offenses. The group solicited comments on the draft proposed guidelines at a public hearing in May 1993. Six months later the Advisory Group submitted final proposed guidelines to the Commission.

The Washington Legal Foundation, "a non-profit public interest law and policy center," had been an active participant in Commission hearings and proceedings on environmental sanctions for several years when the new Advisory Group decided to conduct its meetings in private. The WLF objected and, when it did not receive a satisfactory response, filed this suit in May 1993, alleging that both the Federal Advisory Committee Act, 5 U.S.C. app. 2, §§ 1–15, and federal common law confer upon the public a right of access to the Advisory Group's documents. In particular, the WLF sought access to such "internal documents and memoranda" as the Advisory Group developed or upon which it relied as it formulated its recommendations to the Commission. *Washington Legal Found. v. United States Sentencing Comm'n,* 826 F.Supp. 10, 13 (D.D.C.1993).

The district court entered a summary judgment for the defendants, holding that because the Advisory Group was "estab-lished" and "utilized" by the Sentencing Commission, *see* 5 U.S.C. app. 2, § 3(2)(C), which is not an "agency" under the Administrative Procedure Act, 5 U.S.C. § 551(1), the Advisory Group is not subject to the constraints of FACA. *See* 826 F.Supp. at 13–14. The court also concluded that the Advisory Group's documents are not "public records" subject to the common law right of access: "The documents ... are not part of a public proceeding, nor are they official records, nor are they a final report by the Advisory Group. Rather, they are the predecisional materials upon which a final recommendation to the Commission may develop." *Id.* at 14. The WLF appealed.

We affirmed the district court's holding that FACA does not apply to the Advisory Group. With respect to the federal common law claim, however, we held that the district court erred in deciding, "without knowing what documents the Advisory Group had in its possession," that they need not have been disclosed under the common law. *Washington Legal Found. v. United States Sentencing Comm'n,* 17 F.3d 1446, 1452 (D.C.Cir.1994) (*WLF I*). The way to determine whether the public has a right of access to a document, we explained, is to decide first "whether the document sought is a 'public record.' If the answer is yes, then the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." *Id.* at 1451–52. This balancing should not be done in the abstract; the court should focus upon "the specific nature of the governmental and public interests as they relate to the document itself, as well as the general public interest in the openness of governmental processes." *Id.* at 1452.

Although the district court "appeared confident from the nature of the Advisory Group and the terms of WLF's document request that none of the requested materials would be subject to public access under the common law," we were not so sure, "knowing no more than the general categories of documents named by WLF, that none of these are [*sic*] public records that could survive the applicable balancing test." *Id.* Accordingly,

we remanded the case to the district court with the following instruction:

> The court should assess separately each category of documents requested to determine whether part or all of that category might be composed of public records. If there is any legitimate question as to any or all of the categories, then the court should order a *Vaughn* index [*see Vaughn v. Rosen,* 484 F.2d 820, 827–28 (D.C.Cir. 1973)] to evaluate the individual documents within these categories. For any and all documents determined to be public records, the court should then balance the government's interest in secrecy against the public's interest in disclosure with reference to the contents of the particular documents at issue (as reflected in the *Vaughn* index) to determine whether WLF has a common law right of access to those documents.

On remand, the Government argued for the first time that this suit is barred by sovereign immunity. The WLF responded that 28 U.S.C. § 1361, which gives the district courts jurisdiction over mandamus suits, also waives sovereign immunity therefrom, and, in the alternative, that the *ultra vires* exception of *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), applies in this case. The district court, recognizing that sovereign immunity is a jurisdictional defect that may be raised at any time, held (in an unpublished memorandum) that "sovereign immunity is not a bar to suits under the mandamus statute seeking to require the performance of a legal duty owed to the Plaintiff." Because the jurisdictional inquiry therefore merges with the main issue in the case—whether the Advisory Group has a legal duty to provide public access to the requested documents—the district court proceeded to consider the merits of the case, as follows.

The district court apparently determined that there was after all "a legitimate question as to any or all of the categories" of documents in suit, for it did order a *Vaughn* index, in which the Sentencing Commission itemized more than 700 documents divided into six categories. One of the six consists of public comments on the draft guidelines, which comments the Commission and the Advisory Group have made available to the public. The five categories still at issue in this case consist of (1) personal notes, memoranda, and correspondence on policy matters; (2) preliminary drafts of guideline proposals; (3) copyrighted scholarly research; (4) memoranda prepared at the request of the Advisory Group and materials from other organizations; and (5) letters or memoranda on administrative matters internal to the Advisory Group.

The district court concluded that none of the documents in any of these categories is a "public record" subject to the common law right of access. The court's opinion proceeds from the premise, which it made express but upon which it did not elaborate, that as a matter of federal common law the only documents to which the right of access applies are those "akin to court documents." Here, the court found:

> [T]he documents sought by the WLF memorialize the decision making process the Advisory Group undertook in creating the draft of the recommended sentencing guidelines that the Advisory Group ultimately produced for public comment. Consequently, they are not "public records" as argued by the WLF. More importantly, if these type [*sic*] of deliberative memorials were subject to the common law right, then arguably jury deliberations, private conferences of judges, law clerk notes, and rough drafts of opinions would likewise be subject to the rule. The obvious overriding concerns of maintaining the integrity of the decisional processes and promoting frank discussions and exchanges of ideas precludes such a result in this case.

In the present appeal the WLF contends that the common law right of access applies to a broad range of records, not merely to the records of judicial proceedings and similar documents. Moreover, the WLF argues, in deciding that the Advisory Group's documents are not public records, the district court improperly took into account the Government's concern about confidentiality, thereby conflating the two successive inquiries prescribed by this court in *WLF I.* Fi-

nally, the WLF contends that the district court's decision rests upon erroneous factual findings; that is, even if the court had been correct in thinking that only materials "akin to court documents" are "public records," not all the documents listed are predecisional and many are in fact akin to evidence that might be introduced in a court proceeding.

In addition to asserting sovereign immunity from this suit, the Government maintains that the common law right of access is limited to categories of documents wholly unlike those maintained by the Advisory Group. The few federal cases to uphold a common law right of access, the Government points out, have involved documents "central to the process of adjudication." That limitation is consistent with the policy supporting the right, which is, according to the Government, that of ensuring open legal proceedings and promoting public confidence in the legal process. Moreover, although some state cases have found a common law right of access to all documents that the law requires a state official to maintain, such as licenses and deeds, the documents in this case are not records that the Sentencing Reform Act requires the Sentencing Commission (or the Advisory Group) to create or to keep.

## II. Analysis

■ The first substantive issue before us is whether the Advisory Group's documents are "public records." As detailed below, we do not agree with the district court's conclusion that the common law right of access is limited to materials "akin to court documents" (nor do we necessarily endorse the district court's "parade of horribles"). Even our broader concept of "public records," however, does not encompass the documents that the WLF is seeking. We therefore resolve this case solely on the ground that those documents are not "public records"; we need not go on to balance the Government's interest in confidentiality against the public's interest in disclosure. Before we proceed to the merits, however, we must address a threshold issue, namely, whether this suit is barred by the doctrine of sovereign immunity.

## A. Sovereign Immunity

■ The mandamus statute provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It is well settled that this statute does not by itself waive sovereign immunity. *See, e.g., Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3–4 (1st Cir.1989); *Doe v. Civiletti,* 635 F.2d 88, 89 (2d Cir.1980); *Smith v. Grimm,* 534 F.2d 1346, 1352 n. 9 (9th Cir. 1976); *Essex v. Vinal,* 499 F.2d 226, 231–32 (8th Cir.1974); *McQueary v. Laird,* 449 F.2d 608, 611 (10th Cir.1971); *see also Public Citizen v. Kantor,* 864 F.Supp. 208, 213 (D.D.C.1994) ("The generally accepted rule is that § 1361 does not constitute a waiver of sovereign immunity by the United States").

If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, however, no separate waiver of sovereign immunity is needed. *See, e.g., Chamber of Commerce v. Reich,* 74 F.3d 1322, 1329 (D.C.Cir.1996). This so-called *Larson–Dugan* exception to sovereign immunity is described by the Supreme Court as follows:

> There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign.... [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

*Larson,* 337 U.S. at 689, 69 S.Ct. at 1461; *see also Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–08, 10 L.Ed.2d 15 (1963).

■ Whether the *Larson–Dugan* exception applies to this case depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records. The Government denies that it has such a duty, and that is the only basis upon which it resists application of the *Larson–*

*Dugan* exception. We agree with the district court, therefore, that the question of jurisdiction merges with the question on the merits, to which we now turn.

## B. The Common Law Right of Access

■ In "the courts of this country"—including the federal courts—the common law bestows upon the public a right of access to public records and documents. *Nixon*, 435 U.S. at 597, 98 S.Ct. at 1311–12; *see United States v. Mitchell*, 551 F.2d 1252, 1257 (D.C.Cir.1976), *reversed on other grounds sub nom. Nixon v. Warner Communications, Inc., supra.* A not insignificant body of state case law addresses the scope of this right as against state record-keepers, though the growth of the common law has been stunted in recent years by the spread of comprehensive disclosure statutes. *See Project: Government Information and the Rights of Citizens*, 73 MICH. L.REV. 971, 1163–70 (1975).

As we explained in our first opinion in this case, the decision whether a document must be disclosed pursuant to the common law right of access involves a two-step inquiry. First, the court must decide "whether the document sought is a 'public record.' If the answer is yes, then the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure." 17 F.3d at 1451–52. The district court resolved this case at the first step, concluding that the documents in question are not public records; accordingly, the court held that independent of the balance of interests, the public has no right of access to these documents. In reviewing the district court's decision, therefore, we must first explore the definition of "public record" for the purpose of federal common law.

We are aware of only a few cases, arising from still fewer contexts, in which any federal court acknowledged the common law right of access prior to its endorsement by this court and the Supreme Court in a case arising out of the Watergate affair. *See Ex parte Drawbaugh*, 2 App. D.C. 404 (1894) (recognizing common law right of access to documents filed with court on appeal from decision of Patent Office); *In re Mosher*, 45 C.C.P.A. 701, 248 F.2d 956 (1957) (same); *In re Sackett*, 30 C.C.P.A. 1214, 136 F.2d 248 (1943) (same); *Sloan Filter Co. v. El Paso Reduction Co.*, 117 F. 504 (C.C.D. Colo.1902) (common law right to inspect and copy public records precludes district court from ordering, pursuant to stipulation to dismiss, that files and record pertaining to case be withdrawn from clerk's office); *In re Greenbaum*, 243 F. 965, 969 (E.D.Mich.1917) (same; dicta). In the Watergate case a group of broadcasters sought the release of White House tapes that had been introduced into evidence in certain criminal trials. Although the Government had published redacted transcripts of the tapes, the district court denied access to the tapes themselves in the interest of avoiding prejudice to the Watergate defendants should a new trial be ordered on appeal. *United States v. Mitchell*, 397 F.Supp. 186 (D.D.C.1975). We reversed, holding that the common law right clearly extended to the tapes once they were used as exhibits in a judicial proceeding, and that the district court's justification for denying public access was insufficient to outweigh the presumption in favor of access to public records such as these. *Mitchell*, 551 F.2d at 1260–63. Upon further review the Supreme Court was unequivocal in stating that there is a federal common law right of access "to inspect and copy public records and documents, including judicial records and documents." 435 U.S. at 597, 98 S.Ct. at 1311–12 (citations omitted). The Court nonetheless reversed our decision on the ground that access under the common law should be denied with respect to documents to which the Congress has provided an administrative avenue—in that case via the Presidential Records Act; the availability of a legislatively prescribed route to documents tips the second-step balancing test against their judicially prompted release. *Id.* at 603–06, 98 S.Ct. at 1314–16.

Since the Watergate cases, the common law right of access has been invoked in federal courts with some frequency, but still almost always in cases involving access to court documents. *See, e.g., Hagestad v. Tragesser*, 49 F.3d 1430 (9th Cir.1995) (district court failed to give adequate reason for sealing court documents in derogation of common law right of access); *Mayo v. United*

*States Gov. Printing Office,* 9 F.3d 1450 (9th Cir.1993) (common law right does not guarantee access to Supreme Court slip opinions in electronic form and free of charge); *Smith v. United States Dist. Ct. for S. Dist. of Ill.,* 956 F.2d 647 (7th Cir.1992) (common law right applies to document not admitted into evidence but explicitly relied upon by judge ruling from bench); *Wilson v. American Motors Corp.,* 759 F.2d 1568 (11th Cir.1985) (common law right prevents district court from sealing court records pursuant to settlement agreement); *National Broadcasting Co. v. Myers,* 635 F.2d 945 (2d Cir.1980) (common law right applies to video tapes admitted into evidence in Abscam prosecutions). *But see Schwartz v. United States Dept. of Justice,* 435 F.Supp. 1203 (D.D.C. 1977) (common law right applies to Congress), *aff'd,* 595 F.2d 888 (D.C.Cir.1979) (table).

Unlike the district court in the present case, we are not persuaded by the narrow focus of the federal cases that the common law right is limited to records that are "similar ... to court documents." The Supreme Court's reference in *Nixon* to "a general right to inspect and copy public records and documents, including judicial records and documents," 435 U.S. at 597, 98 S.Ct. at 1311–12, clearly implies that judicial records are but a subset of the universe of documents to which the common law right applies. *See id.* at 597 n. 7, 98 S.Ct. at 1311–12 n. 7 (citing state cases indicating that common law right applies to non-judicial documents); *cf. Mitchell,* 551 F.2d at 1258 ("That the common law right to inspect public records extends to judicial records is clear"). Indeed,

it has been said in this district that "[t]he general rule is that all three branches of government, legislative, executive, and judicial, are subject to the common law right." *Schwartz,* 435 F.Supp. at 1203.

The limited nature of the federal case law on the subject does pose a problem, however. Here we are faced with a claim of access to the documents of a government entity, the Sentencing Commission, that is within the judicial branch but is not a court. *See Mistretta v. United States,* 488 U.S. 361, 384–85, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989). While we have no occasion to doubt that federal common law would extend the right of access to such an entity,* when we look for guidance concerning the application of this right we find that we are in uncharted waters. *Cf. Nixon,* 435 U.S. at 598–99, 98 S.Ct. at 1312–13 ("It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate").

Nor can we turn in this case to the common law of England, which is often a source of guidance in matters of state common law. There is no indication that the common law of England was ever incorporated in substance into the law of the United States. As Justice Chase wrote of the common law of crimes in 1798:

If, indeed, the United States can be supposed, for a moment, to have a common law, it must, I presume, be that of England; and yet, it is impossible to trace when, or how, the system was adopted or introduced. With respect to the individual

---

* The Government does not argue that the Sentencing Commission is beyond the reach of the federal common law right of access by reason of the Congress's decision to exempt it from federal disclosure statutes. *Compare Andrade v. United States Sentencing Comm'n,* 989 F.2d 308, 309 (9th Cir.1993) ("In directing the Commission to comply with certain provisions of the APA, not including [the Freedom of Information Act], *see* 28 U.S.C. § 994(x), Congress indicated implicitly that the Commission should be exempt from other provisions of the statute") *and WLF I,* 17 F.3d at 1450 (Sentencing Commission exempt from FACA) *with Milwaukee v. Illinois,* 451 U.S. 304, 314, 101 S.Ct. 1784, 1791, 68 L.Ed.2d 114 (1981) ("[W]hen Congress addresses a question previ-ously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears"). Nor, in view of the Commission's exemption from the FOIA and the FACA, do we here resolve the question whether coverage by a federal disclosure statute precludes the application of the federal common law right of access altogether; we note, however, that if the common law right does apply, the availability of a statutory means of access would likely tip the scales in the second-step balancing test against requiring disclosure of the document under the common law. *See Nixon,* 435 U.S. at 603–06, 98 S.Ct. at 1314–16.

states, the difficulty does not occur. When the American colonies were first settled by our ancestors, it was held, as well by the settlers, as by the judges and lawyers of England, that they brought hither, as a birth-right and inheritance, so much of the common law, as was applicable to their local situation, and change of circumstances. But each colony judged for itself, what parts of the common law were applicable to its new condition. . . . The common law, therefore, of one state, is not the common law of another; but the common law of England is the law of each state, so far as each state has adopted it. . . . Now, the United States did not bring [the common law] with them from England; the constitution does not create it; and no act of congress has assumed it.

*United States v. Worrall*, 2 U.S. (2 Dallas) 384, 394, 1 L.Ed. 426 (C.C.Pa. 1798); *see Seminole Tribe of Florida v. Florida*, —— U.S. ——, —— – ——, 116 S.Ct. 1114, 1160–65, 134 L.Ed.2d 252 (1996) (Souter, J., dissenting) (noting Framers recognized "that the diverse development of the common law in the several states made a general federal reception impossible"); *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 658, 8 L.Ed. 1055 (1834) ("It is clear, there can be no common law of the United States. . . . There is no principle which pervades the Union and has the authority of law, that is not embodied in the constitution or laws of the Union. The common law could be made a part of our federal system, only by legislative adoption"). This general conclusion is buttressed in this instance by the Supreme Court's clear statement in *Nixon* that the common law right of access in the United States is quite unlike its English counterpart: "In contrast to the English practice, American decisions generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." 435 U.S. at 597, 98 S.Ct. at 1311–12; *see also Mitchell*, 551 F.2d at 1257. We therefore doubt the wisdom of drawing upon English case law for guidance concerning the American public's right of access to the documents of the United States.

By default we must look for the contours of the right of access in the common law of the states, as did the Supreme Court itself in *Nixon*. *See* 435 U.S. at 597–99, 98 S.Ct. at 1311–13. *See generally* 76 C.J.S. *Records* § 62 (1994); 66 Am.Jur.2d *Records and Recording Laws* § 19 et seq. (1973); *Project: Government Information and the Rights of Citizens, supra*, at 1163–1170; *Comment, Public Inspection of State and Municipal Executive Documents*, 45 Fordham L.Rev. 1105, 1107–11 (1977). There we find a range of definitions of "public record," perhaps the most restrictive of which is "a written memorial, made by a public officer . . . . required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done." *Amos v. Gunn*, 84 Fla. 285, 94 So. 615, 634 (1922). The Supreme Court of Missouri applied a similar definition in *Kavanaugh v. Henderson*, 350 Mo. 968, 169 S.W.2d 389 (1943), holding that records required not by statute but by administrative regulations are not "public records." 169 S.W.2d at 392. Among the documents required by law and held to be public records are: an official auditor's report of state spending, *Nowack v. Fuller*, 243 Mich. 200, 219 N.W. 749, 752 (1928); the financial records of a board of education, *Gibson v. Peller*, 34 Ill.App.2d 372, 181 N.E.2d 376 (1962); and applications for welfare benefits, on file with a county clerk, *Research Inst. v. Nix*, 195 Okla. 176, 155 P.2d 983 (1944).

At the other end of the spectrum, the New Jersey courts seem to have embraced the broadest imaginable definition of public or "common-law" records: "any records made by public officers in the exercise of public functions. . . . These materials include almost every document recorded, generated, or produced by public officials whether or not required by law to be made, maintained or kept on file." *Higg–A–Rella, Inc. v. County of Essex*, 141 N.J. 35, 660 A.2d 1163, 1168 (1995); *see also id.* 660 A.2d at 1170 (computer-tape copies of tax assessment lists); *South Jersey Publishing Co. v. New Jersey Expressway Auth.*, 124 N.J. 478, 591 A.2d 921 (1991) (memorandum of executive session at which executive director of Authority was fired); *Red Bank Register, Inc. v. Board of*

*Educ.*, 206 N.J.Super. 1, 501 A.2d 985 (1985) (curriculum reports developed by outside consultant for board of education); *Irval Realty, Inc. v. Board of Pub. Util. Comm'rs,* 61 N.J. 366, 294 A.2d 425 (1972) (accident reports required under regulation promulgated by PUC).

The WLF urges us to follow New Jersey's broad lead by holding that the documents at issue here are public records because they were "required or necessary or convenient" to the Advisory Group in the exercise of its official duties. We think it would be imprudent, however, considering that the federal courts have had very limited experience with the common law right of access, to impose upon the Sentencing Commission the most demanding possible disclosure obligation— the one implicitly rejected by most of the states.

After putting aside the most stringent disclosure requirements to be found among the states, we are still left with a range of definitions for the term "public record." There is some common ground among them, however, and with that as our starting point we can discern the outline of a definition suitable for the purposes of federal common law.

Many of the state cases would allow access only to a "written memorial" of some sort. *See, e.g., Charleston Mail Assoc. v. Kelly,* 149 W.Va. 766, 143 S.E.2d 136, 139 (1965). Although the law of some states does not provide access unless the "written memorial" is required by law to be kept, *see, e.g., Amos,* 94 So. at 634, even the cases taking a more generous view of the subject seem to limit access to documents that can fairly be called "written memorials," *see International Union, UAW v. Gooding,* 251 Wis. 362, 29 N.W.2d 730, 735 (1947) (common law rule, incorporated into state right-to-know statute, is that "public records include not only papers specifically required to be kept by a public officer but all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate or customary method of discharging the duties of the office").

■ Not every writing is a "written memorial," of course. In the governmental context, a written memorial is a writing created and kept for the purpose of preserving a precise record of an official decision or action. *See Linder v. Eckard,* 261 Iowa 216, 152 N.W.2d 833, 835 (1967) (whether document is "public record" depends upon its "nature and purpose"); *accord Salt River Pima-Maricopa Indian Community v. Rogers,* 168 Ariz. 531, 815 P.2d 900, 907 (1991); *City of St. Matthews v. Voice of St. Matthews,* 519 S.W.2d 811, 816 (Ky.1974) ("all records maintained ... as evidence of the manner in which the business of that unit of government has been conducted are public records").

■ Accordingly, we conclude, as a matter of federal common law, that a "public record"—that is, a record to which the public has a right of access, subject to the balance of public and governmental interests—is a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived. This definition adequately protects the public's interest in keeping "a watchful eye on the workings of public agencies," *Nixon,* 435 U.S. at 598, 98 S.Ct. at .1312—an interest we regard as "fundamental to a democratic state," *Mitchell,* 551 F.2d at 1258— and is yet narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken.

If applied at the state level the definition we adopt would encompass, for example, a report or record of government expenditures, *cf. Gibson,* 181 N.E.2d at 378; *Nowack,.* 219 N.W. at 751, as well as documents kept in order to record real estate transactions, *cf. Nevada Title Guar. & Trust Co. v. Grimes,* 29 Nev. 50, 84 P. 1061 (1906), and a list of tax abatements passed by a city council, *cf. McCoy v. Providence Journal Co.,* 190 F.2d 760 (1st Cir.1951) (applying Rhode Island law). It would not encompass the preliminary materials upon which an official relied in making a decision or other writings incidental to the decision itself—for example, the report of a blood test provided in support of

an application for a marriage license, the job application of a would-be government employee, a government auditor's preliminary notes used in the preparation of an official report, or a cover memorandum circulated with a copy of an official report or study.

■ This definition is also consistent with the federal cases holding that documents and exhibits filed with or introduced into evidence in a federal court are public records. A court proceeding, unlike the processes for much decisionmaking by executive and legislative officials, is in its entirety and by its very nature a matter of legal significance; all of the documents filed with the court, as well as the transcript of the proceeding itself, are maintained as the official "record" of what transpired. *See FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir.1987) ("[W]e rule that relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies"); *see also Smith*, 956 F.2d at 650 (holding common law right extends to memorandum from Clerk of Court to judges which, though not admitted into evidence, was relied upon explicitly by trial judge ruling from bench in open court). Indeed, the meaning and legal import of a judicial decision is a function of the record upon which it was rendered. *See* KARL N. LLEWELLYN, THE CASE LAW SYSTEM IN AMERICA § 10, at 14–15 (Paul Gewirtz ed. & Michael Ansaldi trans., 1989).

■ The documents at issue in the present case were not created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance. Although the Advisory Group undeniably functioned in an official governmental capacity, it had a very limited mission, namely, to recommend sentencing guidelines to the Sentencing Commission. The Advisory Group's final report, which contains its recommendations, is available to the public, as are the public comments submitted during the notice-and-comment period. Although we disagree with the district court that all of the documents still at issue in this case are "pre-decisional," some

of them having been compiled after the release of the final report, we do find—with the benefit of a comprehensive index of the specific documents at issue, which we lacked when *WLF I* was before us—that each category of documents is made up entirely of materials that are, if not preliminary, then merely incidental to the only official action the Advisory Group was authorized to take, *viz.*, recommending sentencing guidelines to the Commission.

■ Finally, the WLF contends that the Advisory Group's documents are public records because they were by law "required to be compiled." This argument is based upon the Sentencing Reform Act provision "requir[ing] that, as a starting point in its development of the initial sets of guidelines for particular categories of cases, the Commission ascertain the average sentences imposed in such categories of cases prior to the creation of the Commission...." 28 U.S.C. § 994(m). The Act also requires the Commission to "consult with authorities on ... various aspects of the Federal criminal justice system" and to consider "comments and data coming to its attention." 28 U.S.C. § 994(*o*).

■ Assuming, *arguendo*, the WLF"s premise that any document "required by law to be kept" is necessarily a public record for the purpose of the federal common law right of access, we disagree with the WLF"s construction of the Sentencing Reform Act. A requirement that an agency merely consult or consider certain information or make certain calculations in the process of developing a policy or rule is not a record-keeping requirement. Nor is it a requirement that the agency memorialize its decisionmaking process by keeping the materials upon which it relied, as does a statute requiring formal— that is, "on the record"—rulemaking or adjudication. *Cf.* Walsh–Healey Act, 41 U.S.C. § 43a(b) (formal rulemaking "on the record after opportunity for a hearing" for wage determinations for public contracts); National Labor Relations Act, 29 U.S.C. § 160(b)-(c) (formal adjudication of labor disputes). Neither the Sentencing Reform Act nor any more general Act of Congress requires the

Commission (or its delegate) to keep a record of its proceedings or research. We therefore find no basis for concluding that the documents in question were required by law to be kept.

### III. Conclusion

Although we do not entirely agree with the district court's analysis in this case, we do agree with its conclusion: the documents sought by the WLF are not public records. They are therefore beyond the scope of the common law right of access, and it is not necessary to balance the public's interest in disclosure against the Government's interest in confidentiality as provided in the second step of the analysis laid out in *WLF I*. The decision of the district court is therefore

*Affirmed.*