# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 23, 2016        Decided May 20, 2016

No. 14-1227

IN RE: OMAR KHADR,
PETITIONER

———

On Petition For A Writ of Mandamus and Prohibition to the
United States Court of Military Commission Review

———

*Samuel T. Morison*, Attorney, Office of Military
Commissions Defense Organization, argued the cause and
filed the briefs for petitioner. *Justin J. Swick*, Attorney,
entered an appearance.

*Eugene R. Fidell* was on the brief for *amicus curiae* Ethics
Bureau at Yale in support of petitioner.

*Joseph F. Palmer*, Attorney, U.S. Department of Justice,
argued the cause for respondent. With him on the brief were
*Steven M. Dunne*, Chief, Appellate Unit, and *John F. De Pue*,
Attorney.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and
RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Omar Ahmed Khadr was a
member of al Qaeda. On July 27, 2002, at the age of 15,

Khadr took part in a firefight in Afghanistan against U.S. forces. During the battle, Khadr killed a U.S. Army soldier, Sergeant First Class Christopher Speer.

Khadr was captured that day by U.S. forces. He was later transferred to the U.S. Naval Base at Guantanamo Bay, Cuba, for continued detention as an enemy combatant in the U.S. war against al Qaeda.

In 2007, the United States brought war crimes charges against Khadr and sought to try him before a U.S. military commission. The charges included conspiracy to commit murder and material support for terrorism. *See* 10 U.S.C. § 950t(25), (29). In 2010, the United States and Khadr reached a plea agreement. Pursuant to the deal, Khadr pled guilty and was sentenced to eight years in military prison. Two years later, in 2012, the United States transferred Khadr to Canadian authorities. The Canadian authorities subsequently released Khadr, and he is now apparently free on bail in Canada.

In 2013, more than three years after his guilty plea and about a year after he had been turned over to Canada, Khadr appealed his military commission conviction to the U.S. Court of Military Commission Review. Among other arguments, Khadr contended that conspiracy and material support for terrorism – two of the offenses to which he pled guilty – were not war crimes triable by military commission, at least not back in 2002 when he engaged in the charged conduct. Khadr's appeal is being held in abeyance by the U.S. Court of Military Commission Review pending our Court's en banc resolution of *Bahlul v. United States*, No. 11-1324.

The U.S. Court of Military Commission Review consists of two categories of judges: (i) appellate military judges in the

military justice system who are designated by the Secretary of Defense to serve on the Court and (ii) civilians who are appointed by the President with the advice and consent of the Senate to serve as judges on the Court. *See* 10 U.S.C. § 950f(b).

The U.S. Court of Military Commission Review ordinarily sits in panels of three judges. *See id.* § 950f(a). Khadr has moved for one of the three judges on his appeal – Judge William B. Pollard III – to disqualify himself. Judge Pollard is a civilian who serves as a part-time judge on the Court. He also maintains a private law practice. Khadr contends that this arrangement is unlawful and requires Judge Pollard's disqualification. In a written opinion, Judge Pollard denied Khadr's motion. Judge Pollard ruled that the relevant statutes authorize the civilians who serve as judges on that Court to also maintain a part-time private law practice.

Khadr has now petitioned this Court for a writ of mandamus ordering Judge Pollard's disqualification. To obtain a writ of mandamus, Khadr must show (among other things) a "clear and indisputable" right to Judge Pollard's disqualification. *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 381 (2004). Although Khadr's arguments carry some force, he has not shown a "clear and indisputable" right to relief at this time. We therefore deny the petition. If the U.S. Court of Military Commission Review decides against Khadr in his pending appeal, he may renew his arguments about Judge Pollard on direct appeal to this Court. *See* 10 U.S.C. § 950g.

I

The Military Commissions Act of 2009 established an Article I "court of record to be known as the 'United States

Court of Military Commission Review.'" 10 U.S.C. § 950f(a). The Court reviews final decisions of military commissions. *Id.* § 950f(c)-(d). The Court consists "of one or more panels, each composed of not less than three judges." *Id.* § 950f(a).

The 2009 Act authorizes both military judges and civilians to serve on the U.S. Court of Military Commission Review. *Id.* § 950f(b). The Secretary of Defense may assign appellate military judges from the military justice system to serve on the Court. *Id.* § 950f(b)(2). In addition, the President, with the advice and consent of the Senate, may appoint civilians to serve as judges on the Court. *Id.* § 950f(b)(3).

The 2009 Act does not prescribe a total number of judges for the U.S. Court of Military Commission Review, nor does it prescribe a particular number or percentage of military judges or civilian judges. *Id.* § 950f(b). As of now, nine judges serve on the U.S. Court of Military Commission Review. Seven are appellate military judges, and two are civilians.

The U.S. Court of Military Commission Review is an unusual court in that its caseload depends on the number of military commission proceedings appealed to it. At any given time, therefore, the Court's judges may have very little to do.

Consistent with that reality, the military judges who serve on the U.S. Court of Military Commission Review also continue to serve on the military appeals courts from which they are drawn. As for the civilian judges, Congress did not indicate whether those judges must serve full-time on the Court or instead may serve part-time and earn outside income while maintaining a private law practice, for example. In addition, Congress did not set the compensation for those civilian

judges. Nor did Congress specify the conditions under which the civilian judges may be removed by the President.[1]

Faced with statutory silence on those key issues, the Department of Defense designated the Court's civilian judges as "Highly Qualified Experts" and "special government employees" under the relevant government employment statutes. *See* 5 U.S.C. § 9903; 18 U.S.C. § 202. Without getting too deep into the weeds for now, suffice it to say that the Department interprets those two statutory designations to authorize the Court's civilian judges to serve part-time and earn outside income. For their part-time service on the Court, the civilian judges are paid under the Department's pre-existing compensation scheme for Highly Qualified Experts.

The civilian judge in Khadr's case, Judge William B. Pollard III, was nominated by President Obama on November 10, 2011, and confirmed unanimously by the Senate on June 21, 2012. Since then, Judge Pollard has served part-time on the U.S. Court of Military Commission Review pursuant to his "Highly Qualified Expert" and "special government employee" designations. He has also continued his private law practice in New York.

---

[1] The U.S. Court of Military Commission Review created by the 2009 Act is the successor to a court of the same name established by the Military Commissions Act of 2006. *See* Pub. L. No. 109-366, 120 Stat. 2600 (2006). Both military judges and civilians likewise served on that predecessor court. Those earlier civilian judges served on a part-time basis and maintained their private law practices.

6

II

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). To obtain mandamus relief, a petitioner must show, among other things, that "his right to issuance of the writ is clear and indisputable." *Id.* at 381 (internal quotation marks and brackets omitted).

In support of his petition for a writ of mandamus ordering Judge Pollard's disqualification, Khadr has advanced four primary arguments. But as we will explain, Khadr has not shown a "clear and indisputable" right to mandamus.[2]

*First*, Khadr argues that Judge Pollard's disqualification is compelled by the Rules of Practice of the U.S. Court of Military Commission Review. Those rules are promulgated (and can be amended) by the Chief Judge of the U.S. Court of Military Commission Review, subject to approval by the Secretary of Defense. *See* Manual for Military Commissions Rule 1201(b)(6) (2012).

---

[2] The statutes governing military commissions afford this Court jurisdiction only over "a final judgment rendered by a military commission." 10 U.S.C. § 950g(a). This Court has held that mandamus still remains available to review certain interlocutory orders. *See In re al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015). In particular, mandamus is appropriate when an interlocutory order would cause an "irreparable" injury that would otherwise "go unredressed." *Id.* at 79. One such "irreparable" injury, this Court said in *al-Nashiri*, is "the existence of actual or apparent bias" by the judge. *Id.* (emphasis omitted). In his mandamus petition to this Court, Khadr contends that Judge Pollard is biased and must disqualify himself. Therefore, under *al-Nashiri*, Khadr may seek mandamus relief.

The rules require judges of the U.S. Court of Military Commission Review to "disqualify themselves under circumstances set forth in 28 U.S.C. § 455, R.M.C. 902, or in accordance with Canon 3C, Code of Conduct for United States Judges as adopted by the Judicial Conference of the United States." U.S. Court of Military Commission Review Rules of Practice Rule 25(a). In turn, all of those referenced provisions obligate a judge to "disqualify" himself or herself in, among other circumstances, any "proceeding" in which his or her "impartiality might reasonably be questioned."

According to Khadr, Judge Pollard's impartiality as a judge on the U.S. Court of Military Commission Review might reasonably be questioned because the Department of Defense pays him as a Highly Qualified Expert. Khadr claims that the designation affords the Department power over Judge Pollard's pay and tenure. For example, Khadr says that the Department may give Judge Pollard a bonus disguised as a "retention incentive payment." Department of Defense Instruction No. 1400.25 Enclosure 3.8.d (Apr. 3, 2013). Or, Khadr says, the Department may dismiss Judge Pollard at will. According to Khadr, the Department's carrots and sticks over Judge Pollard's pay and tenure mean that the Judge's impartiality might reasonably be questioned. Khadr surmises that Judge Pollard may be induced to rule more often in favor of the Government so as to maximize his pay and extend his tenure.

But the Military Commissions Act of 2009 provides that the Department of Defense may not "attempt to coerce or, by any unauthorized means, influence the action of a judge" of the U.S. Court of Military Commission Review. 10 U.S.C. § 949b(b)(1)(A). In line with that statutory prohibition, the Department of Defense has expressly represented to this Court

that it may not pay Judge Pollard any special bonus (including a retention incentive payment) for his work. *See* Tr. of Oral Arg. at 18-20. Likewise, the Department has expressly represented that Judge Pollard may be removed by the President only for cause and not at will. *Id.* at 21-22.

In light of the statute and those explicit representations to this Court, Khadr has not shown a "clear and indisputable" right to Judge Pollard's recusal based on the pay and tenure arrangements associated with his Highly Qualified Expert status.

*Second*, Khadr raises another, related argument under the appearance of impartiality standard incorporated into the Rules of Practice. In his capacity as a judge on the U.S. Court of Military Commission Review, Judge Pollard adjudicates cases involving the Government. But according to Khadr, Judge Pollard or his firm could theoretically litigate against the Government. Khadr says that this arrangement undermines the appearance of Judge Pollard's impartiality.

But Khadr has not persuasively explained why Judge Pollard's mere employment with a law firm that potentially litigates cases against the U.S. Government means – clearly and indisputably – that Judge Pollard may not serve as an impartial judge on the U.S. Court of Military Commission Review.

If the statute in fact authorizes Judge Pollard to work part-time as a judge and maintain a private practice of law, then we could not say that his impartiality might reasonably be questioned solely because of his dual employment. The statute would in effect indicate that it is not reasonable to question his impartiality solely because of his dual employment. *Cf. Liteky v. United States*, 510 U.S. 540, 553 &

n.2 (1994). So the question of whether Judge Pollard's impartiality might reasonably be questioned turns on whether the statute in fact authorizes the Judge to maintain a part-time law practice. To obtain mandamus, moreover, Khadr must show a "clear and indisputable" right to relief. Putting those two points together, Khadr must show "clearly and indisputably" that the statute does not authorize Judge Pollard's dual employment.

We cannot say that. Congress specifically provided that civilians could serve as judges on the U.S. Court of Military Commission Review. *See* 10 U.S.C. § 950f(b)(3). Given the limited and sporadic workload of that Court, Congress undoubtedly anticipated that those civilians might be part-time judges and would have other cases and matters in their private law practices. Indeed, civilians served as part-time judges on the predecessor court to the U.S. Court of Military Commission Review while also maintaining private law practices. Yet Congress took no steps in the 2009 Act to bar civilians from serving part-time on the current U.S. Court of Military Commission Review while simultaneously maintaining a private law practice.

Because Khadr has not "clearly and indisputably" shown that the 2009 Act precludes civilians from serving part-time on the Court while maintaining a private law practice, we may not grant mandamus relief on this basis.

*Third*, Khadr contends that Judge Pollard must disqualify himself because, according to Khadr, the Judge's part-time private practice of law violates 18 U.S.C. § 203(a), a criminal statute.[3] As applicable here, Section 203(a) prohibits covered

---

[3] This provision provides as follows: "Whoever, otherwise than as provided by law for the proper discharge of official duties,

federal employees from receiving compensation for representing parties in claims either against or substantially involving the United States.

Khadr argues that Judge Pollard's continued private practice of law – to the extent his firm is involved in claims against or involving the United States – violates Section 203(a). The Government responds that the Department of Defense designated Judge Pollard as a "special government employee." *See* 18 U.S.C. § 202(a). Special government employees may work for temporary stints in government (full-time or part-time) and are deemed exempt from certain otherwise applicable federal conflict of interest prohibitions, including Section 203(a). *Id.* Special government employees are instead subject to Section 203(a) only in narrow circumstances – for example, "only in relation to a particular matter involving a specific party or parties in which such employee has at any time participated personally and substantially." *Id.* § 203(c)(1).

---

directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept any compensation for any representational services, as agent or attorney or otherwise, rendered or to be rendered either personally or by another . . . at a time when such person is an officer or employee or Federal judge of the United States in the executive, legislative, or judicial branch of the Government, or in any agency of the United States, in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which the United States is a party or has a direct and substantial interest, before any department, agency, court, court-martial, officer, or any civil, military, or naval commission . . . shall be subject to the penalties set forth in section 216 of this title." 18 U.S.C. § 203(a).

The Section 203 question arises in this case because special government employees – to qualify for that status – must be employees "of the executive or legislative branch of the United States Government." *Id.* § 202(a). According to Khadr, Judge Pollard is an employee of the "judicial branch," which the relevant statute defines as encompassing "any court created pursuant to article I of the United States Constitution." *Id.* § 202(e)(2). The U.S. Court of Military Commission Review is a court created pursuant to Article I of the U.S. Constitution. Khadr therefore contends that Judge Pollard does not qualify as a "special government employee" for purposes of Section 203.

The Government disagrees. It says that military appellate courts – including the U.S. Court of Military Commission Review – are part of the executive branch. *See Edmond v. United States*, 520 U.S. 651, 664-65 & n.2 (1997). In addition, the Government points out that Congress expressly designated similar Article I judges as "special government employees." *See* 10 U.S.C. § 942(e)(4) (Senior judges on the U.S. Court of Appeals for the Armed Forces "shall be considered to be a special government employee" while performing their judicial duties.). Therefore, according to the Government, the Department of Defense could appropriately designate Judge Pollard as a "special government employee."

We need not definitively resolve that statutory debate at this stage. Given the language of the relevant statutes, Khadr's Section 203(a) argument packs substantial force. But the Government raises substantial responses about Congress's intent. We cannot say that the statutes afford Khadr a "clear and indisputable" right to mandamus relief.

That said, this is a serious issue – one that Congress and the Department of Defense would be wise to address and

resolve promptly, either by expressly barring the civilian judges on the U.S. Court of Military Commission Review from the private practice of law or by making crystal clear that the civilian judges on the Court may serve as special government employees and continue their part-time private practice of law.

*Fourth*, Khadr claims that Judge Pollard has violated 28 U.S.C. § 454. That section states in its entirety: "Any justice or judge appointed under the authority of the United States who engages in the practice of law is guilty of a high misdemeanor."

The parties disagree about the applicability of that section to the judges of the U.S. Court of Military Commission Review. Khadr points to the text of the law and says that Judge Pollard is a "judge appointed under the authority of the United States" who is engaging "in the practice of law" through his private law practice. Simple enough.

In response, the Government contends that the terms "judge of the United States" and "court of the United States" are defined for purposes of Title 28 – including Section 454 – so as to exclude the U.S. Court of Military Commission Review. *See* 28 U.S.C. § 451. The Government further asserts that those narrow definitions apply to the phrase "judge appointed under the authority of the United States" in Section 454 of the same title, and that Judge Pollard is therefore not covered by Section 454. In response, Khadr argues that Section 454's phrase "judge appointed under the authority of the United States" sweeps more broadly than the term "judge of the United States," and that Judge Pollard is a judge appointed under the authority of the United States for purposes of Section 454.

Again, we need not resolve this dispute at this stage. Neither this Court nor any other court of appeals has analyzed whether Section 454 applies to judges on the U.S. Court of Military Commission Review. And the Government raises a substantial argument about why Section 454 does not apply to judges on that Court. We cannot say that Section 454 affords Khadr a "clear and indisputable" right to relief.

\* \* \*

Mandamus is a "drastic and extraordinary remedy." *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). Appellate courts grant mandamus only rarely, reserving the writ for cases where petitioners show a "clear and indisputable" right to relief. The regular course of appeal is the primary vehicle for appellate review. *See, e.g.*, *Kerr v. U.S. District Court for the Northern District of California*, 426 U.S. 394, 403 (1976).

Applying the traditional "clear and indisputable" standard, we deny Khadr's petition for a writ of mandamus. If the U.S. Court of Military Commission Review rules against Khadr in his pending appeal, he may renew his arguments about Judge Pollard on direct appeal to this Court. *See* 10 U.S.C. § 950g. In other words, our denial of mandamus relief does not preclude Khadr from advancing these same arguments in a future appeal where the standard of review will not be so daunting.

Although we deny the writ, we cannot deny that Khadr has raised some significant questions. We encourage Congress and the Executive Branch to promptly attend to those issues and to make clear, one way or the other, whether the civilians who serve as judges on the U.S. Court of Military Commission

Review may continue to engage in the part-time practice of law and, if so, the circumstances under which they may do so.

We deny the petition.

*So ordered.*