# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 13, 2023        Decided May 28, 2024

No. 22-5304

JASON LEOPOLD,
APPELLANT

v.

J. THOMAS MANGER, CHIEF, UNITED STATES CAPITOL POLICE
AND RONALD GREGORY, ACTING INSPECTOR GENERAL OF THE
UNITED STATES CAPITOL POLICE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00465)

*Jeffrey Light* argued the cause and filed the briefs for appellant.

*Thomas Pulham*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Michael S. Raab*, Attorney.

Before: PILLARD, WILKINS and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge:*

Jason Leopold is an investigative reporter who seeks to access the written directives of the United States Capitol Police, as well as audits and reports prepared by the Inspector General of the Capitol Police. To that end, he sued and invoked the District Court's mandamus jurisdiction under 28 U.S.C. § 1361 to bring two claims that are relevant here. The first claim arose under the common law right to access public documents and applies to both the written directives along with the documents prepared by the Inspector General. His second claim arose under 2 U.S.C. § 1909(c)(1) and applies to only the reports and audits prepared by the Inspector General. The District Court dismissed these claims holding that sovereign immunity barred suit. This appeal followed. We affirm the District Court's dismissals for lack of jurisdiction, although for reasons different from those relied on by the District Court.

**I.**

In *Nixon v. Warner Communications, Inc.*, the Supreme Court found it "clear," as a matter of federal common law, that there is a "right to inspect and copy public records and documents." 435 U.S. 589, 597 (1978). But what was less clear, the Court conceded, were the "precise[] contours of the common-law right." *Id.* at 599. Since *Nixon*, we have attempted to fill some of the gaps.

Beginning with *Washington Legal Foundation v. United States Sentencing Commission*, we explained that where a plaintiff asserts the common law right to access, the court must determine whether the document sought is a public record. 17 F.3d 1446, 1451 (D.C. Cir. 1994) (*Washington Legal Foundation I*). And if the document is a public record, then the court must balance the government's "specific" interest in

secrecy against the public's "specific" interest in disclosure, "as well as the general public interest in the openness of governmental processes." *Id.* at 1452. There, we also made clear that sometimes a list with a description of the withheld documents (akin to a "*Vaughn* index") is necessary to aid the district court's analysis. *Id.* (citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973)). Because the district court had not adequately familiarized itself with the documents at issue and did not apply the proper balancing test, we remanded. *Id.* at 1452–53.

The case then returned to our Court. *See Washington Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897 (D.C. Cir. 1996) (*Washington Legal Foundation II*). With the benefit of a more developed record, we provided a concrete definition of a public record—"a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." *Id.* at 905. This definition, we explained, was not "limited to records that are similar to court documents," but applies to "all three branches of government." *Id.* at 903 (internal quotation marks and modifications omitted).

In this case, Mr. Leopold invoked the District Court's Section 1361 mandamus jurisdiction to access records held by the Capitol Police. His complaint alleges that, under *Nixon* and *Washington Legal Foundation I & II*, he has a common law right to access 101 Capitol Police directives that were in effect during the January 6, 2021 attack on the United States Capitol, along with audits and reports that the Inspector General of the Capitol Police prepared and submitted to the Capitol Police Board. Additionally, his complaint alleges that the Inspector General of the Capitol Police must "post" all audits and reports "making a recommendation for corrective action on the

website of the Office of Inspector General" under 2 U.S.C. § 1909(c)(1). *See* J.A. 9.

Of course, the Capitol Police disagrees. In response to Mr. Leopold's common law claims, the Capitol Police argues that sovereign immunity bars suit. Broadly, the Capitol Police contends that federal courts have no authority to hear a suit based on an allegation that a government officer has violated federal common law. More narrowly, in its view, none of the records that Mr. Leopold requested fall within *Washington Legal Foundation II*'s definition of a public document.

The Capitol Police further argues that Mr. Leopold's common law right to access does not extend to sixty-five of the 101 written directives, nor to any of the audits and reports prepared by the Inspector General. That is because, the Capitol Police argues, 2 U.S.C. § 1979 governs; and it prevents the "release[]" of "any security information" absent certain determinations made by the Capitol Police Board. 2 U.S.C. § 1979.

As for Section 1979's application here, the Capitol Police asserts that the sixty-five written directives cannot be disclosed because one of its review teams designated these directives as "security information." The Capitol Police advances a similar argument regarding its Inspector General's audits and reports: in late 2017, the Capitol Police Board designated all of the Inspector General's "audit reports, investigation[] reports, analyses, reviews, evaluations, [and] annual work plans" as "security information" in Order 17.16. J.A. 19.

The District Court accepted many of the Capitol Police's arguments and held that sovereign immunity barred Mr. Leopold's suit. *See Leopold v. Manger*, 630 F. Supp. 3d 71 (D.D.C. 2022). This appeal followed.

## II.

We begin with the "first and fundamental question" of subject-matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900)).  Mr. Leopold invoked Section 1361, which provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

In a footnote, the Capitol Police cites a few decisions from other courts of appeal that limit Section 1361 jurisdiction to Executive Branch officials.  Capitol Police Br. 53 n.9; *see generally Liberation News Serv. v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970) (concluding that the legislative history supports limiting Section 1361 to executive branch officials); *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007) (holding that the Supreme Court of the United States is not an "agency" under Section 1361); *Semper v. Gomez*, 747 F.3d 229, 250 (3d Cir. 2014) (holding that Section 1361 does not allow courts to issue writs of mandamus against federal judges).  We assume without deciding that these decisions are correct, and construe Mr. Leopold's invocation of Section 1361 as an application for a mandatory injunction under the federal-question statute, 28 U.S.C. § 1331.  *See Wren v. Carlson*, 506 F.2d 131, 133 (D.C. Cir. 1974).  As we have previously held, and as Mr. Leopold's counsel acknowledged at oral argument, Oral Arg. 8:15–9:13, a "request for [a] mandatory injunction [is] generally judged by the same principles as [a] request for mandamus." *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (citing P. Bator et al., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 998–99 (4th ed. 1996)).

Though we construe Mr. Leopold's claim as a request for mandatory injunction under Section 1331, the sovereign immunity issue remains, as it is not waived by Section 1331 or Section 1361. *See Swan*, 100 F.3d at 981. Under the "*Larson-Dugan*" exception, however, federal courts may enjoin federal officers from taking actions that the sovereign has not "empowered [the officer] to do or [the officer] is doing [] in a way which the sovereign has forbidden." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *see also Dugan v. Rank*, 372 U.S. 609, 620–23 (1963); *Schilling v. U.S. House of Representatives*, No. 22-5290, slip op. at 4–5 (D.C. Cir. May 28, 2024). That is because these "actions are *ultra vires* [the delegated] authority and therefore may be made the object of specific relief." *Larson*, 337 U.S. at 689. In these circumstances, "there is no sovereign immunity to waive—it never attached in the first place." *Chamber of Com. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996).

We have already explained the relationship between the *Larson-Dugan* exception and sovereign immunity in *Washington Legal Foundation II*, which presented nearly identical circumstances. There, the plaintiff sought a writ of mandamus to force the government to allow access to government documents based on the common law right to access public records and documents. *Washington Legal Found. II*, 89 F.3d at 900. And there, as is the case here, the government asserted sovereign immunity as it denied that it had any duty to disclose the documents. *Id.* at 901. Thus, to determine whether we could issue a writ of mandamus under the *Larson-Dugan* exception, we explained "that the question of jurisdiction merges with the question on the merits." *Id.* at 902. Unsurprisingly, Mr. Leopold argues that here, too, the jurisdictional inquiry merges with the merits.

The Capitol Police, however, asks us to chart a new path. It argues that *Washington Legal Foundation II* missed an antecedent issue: whether *Larson* applies to common law duties. *Larson*, the Capitol Police asserts, has but two applications: (1) if a federal officer takes an action that exceeds a power defined by statute and (2) if a statute or order that authorizes a federal officer to act in the sovereign's name is unconstitutional. Capitol Police Br. at 17–19. Ultimately, the Capitol Police argues that we cannot follow *Washington Legal Foundation II* while remaining faithful to *Larson*. But this argument misconstrues *Washington Legal Foundation II* and reads *Larson* too narrowly.

To start, *Washington Legal Foundation II*'s reasoning rejected the Capitol Police's approach—and we are bound by *Washington Legal Foundation II*'s reasoning, just as we are bound by its holding. *Citizens for Resp. and Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) ("[W]e are bound 'not only by the result' of a prior opinion 'but also by those portions of the opinion necessary to that result.'") (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (modifications omitted)).

Before merging the jurisdictional inquiry with the merits, *Washington Legal Foundation II* directly quoted the relevant passage from *Larson* that explains *ultra vires* actions "may be made the object of specific relief." 89 F.3d at 901 (quoting *Larson*, 337 U.S. at 689). In this same passage, *Larson* concluded that, "[w]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Larson*, 337 U.S. at 689. By merging the jurisdictional inquiry with the merits, *Washington Legal Foundation II* read *Larson* to acknowledge that exceeding statutory limitations is just one example of an *ultra vires* act—not the *only* example of an *ultra vires* action;

the linchpin to whether sovereign immunity applies is the presence, or absence, of an *ultra vires* action. And we did not limit *ultra vires* acts to those that exceed an authorization in statute or the Constitution.

*Washington Legal Foundation II*'s application of *Larson* to *ultra vires* acts is also consistent with other courts of appeals that have held that sovereign immunity does not prevent an injunction against a state officer who abridges a common law duty without statutory authorization. *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1182 (9th Cir. 2012) ("*Ex parte Young* is not limited to claims that officials are violating the federal Constitution or federal statute; it applies to federal common law as well."). And make no mistake, *Larson* and *Ex parte Young*, 209 U.S. 123 (1908), share indistinguishable doctrinal underpinnings. *See Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 928 (D.C. Cir. 2012) (citing *Ex parte Young* and *Larson* as the "standard approach" to obtaining "injunctive relief with respect to a sovereign entity notwithstanding sovereign immunity"). Thus, a natural question arises: Why does *Ex parte Young* apply to common law duties, but not *Larson*? The Capitol Police does not provide a response.

Instead, the thrust of the Capitol Police's argument, which cherry picks portions of one paragraph in *Larson* to create a new immunity rule, confuses the forest for the trees. Sure, the Capitol Police is correct that *Larson* recognizes that an officer's tortious action is not "ipso facto beyond his delegated powers." 337 U.S. at 695. But there's more to it: "if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law." *Id.* Actions done with statutory authority "cannot be enjoined or directed, since it is also the action of the sovereign." *Id.* Put

into context, *Larson*'s instruction is clear: Courts can enjoin or direct the actions of a government official, so long as that action is not "also the action of the sovereign." *Id. Larson* does not suggest, as the Capitol Police argues, that the Constitution and statutes are the only determinants for whether an act is "of the sovereign." *Id.*

As to the Capitol Police's suggestion that our previous discussions of the *Larson-Dugan* exception without referencing common law duties lessens *Washington Legal Foundation II*'s force—we are not persuaded. Capitol Police Br. at 19–20. In those cases, the plaintiff did not argue that the government abridged a federal common law duty. *See Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (rejecting the government's argument that the *Larson-Dugan* exception applies to only statutory violations and applying it to a constitutional duty); *Swan*, 100 F.3d at 981 (applying the *Larson-Dugan* exception to an alleged statutory violation where no common law duty is alleged); *Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (applying the *Larson-Dugan* exception to alleged constitutional and statutory violations where no common law duty applied); *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 140 (1951) (applying the *Larson-Dugan* exception based on an alleged violation of an executive order); *Vann v. Kempthorne*, 534 F.3d 741, 750–52 (D.C. Cir. 2008) (applying the *Larson-Dugan* exception based on an alleged violation of a treaty). Thus, any discussion of the *Larson-Dugan* exception applied to federal common law would have been inappropriate. The question was not presented.

So, the mere fact that Mr. Leopold alleges a violation of federal common law does not foreclose application of the *Larson-Dugan* exception. Neither does the fact that he invokes a right to access to documents. In *Virginia Office for*

*Protection and Advocacy v. Stewart*, 563 U.S.247 (2011), the Supreme Court held that allegations of a violation of a federal statutory right of access to certain documents could satisfy the *Ex parte Young* exception to sovereign immunity. As the Court explained, "there is no doubt [the agency's] suit satisfies th[e] straightforward inquiry [of *Ex parte Young*]. It alleges that [the officials'] refusal to produce the requested medical records violates federal law; and it seeks an injunction requiring the production of the records, which would prospectively abate the alleged violation." *Id.* at 255–56. It stands to reason that, if a statutory right of access claim can satisfy the officer-suit exception to sovereign immunity, an analogous officer suit based on a common law right of access also marks an exception to sovereign immunity. Again, the Capitol Police provides no basis to conclude otherwise.

Last, the Capitol Police argues that we need not merge the merits with jurisdiction because the right to access public documents does not extend to the Legislative Branch's records. Precedent says otherwise. As *Nixon* explained, "[i]t is clear that courts of this country recognize a general right to inspect and copy public records and documents, *including* judicial records and documents." 435 U.S. at 597 (emphasis added). This "clearly implies that judicial records are but a subset of the universe of documents to which the common law right applies." *Washington Legal Found. II*, 89 F.3d at 903. Thus, the right "extends beyond judicial records to the 'public records' of all three branches of government." *Ctr. for Nat'l Sec. Studs. v. Dep't of Just.*, 331 F.3d 918, 936 (D.C. Cir. 2003) (citing *Washington Legal Found. II*, 89 F.3d at 903–04); *Schilling*, slip op. at 6.

Having peeled back the layers, what's left of the government's argument is eerily familiar. "[T]he only basis upon which [the government] resists application of the *Larson-*

*Dugan* exception" is the denial of the duty to provide "access to certain government records." *Washington Legal Found. II*, 89 F.3d at 901–02. Therefore, "the question of jurisdiction merges with the question on the merits, to which we now turn." *Id.* at 902.

## III.

On the merits, now merged with jurisdiction, Mr. Leopold must clear three high hurdles. *See Swan*, 100 F.3d at 976 n.1; *see also Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) ("Few legal standards are more exacting than the requirements for invoking mandamus jurisdiction."). First, he must show that he has "no other adequate means to attain" the desired relief. *Cheney v. U. S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). Second, he must show that his "right to issuance of the writ is clear and indisputable," *id.*. at 381 (cleaned up), and that its issuance will compel the government official to perform a "ministerial duty," *Swan*, 100 F.3d at 976 n.1. If Mr. Leopold's claim survives those two bars, yet another awaits: he must convince the issuing court "that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380.

Mr. Leopold seeks mandamus-style relief to compel two actions. To vindicate his common law right of access to public records, he seeks to compel the Capitol Police and its Inspector General to provide access to the withheld records. Mr. Leopold's other claim is pursuant to a statute that is applicable to the Inspector General of the U.S. Capitol Police. *See* J.A. 8–9. For this claim, Mr. Leopold seeks a court order mandating that the Capitol Police post certain documents on the Inspector General website, and that the Inspector General produce various permit applications, reports, financial statements, audits, policies, and related records. J.A. 9–10.

But here's Mr. Leopold's big problem: Even though Mr. Leopold asks for mandamus based on various alleged breaches of duties, he has not pled nor briefed how or why each form of relief that he seeks is ministerial. *See Steel Co.*, 523 U.S. at 104 ("the party invoking federal jurisdiction bears the burden of establishing its existence"). This oversight effectively kills Mr. Leopold's claims: Mandamus jurisdiction lies only to compel ministerial, as opposed to discretionary, duties. *See generally Kendall v. U.S. ex rel Stokes*, 37 U.S. 524, 610 (1838) (discussing the "ministerial act" requirement); *Stern v. South Chester Tube Co.*, 390 U.S. 606, 608 (1968) (defining mandamus as "a suit against a public officer to compel performance of some 'ministerial' duty"); *see also Swan*, 100 F.3d at 976 n.1 (a writ of mandamus seeks "to compel federal officials to perform a statutorily required ministerial duty").

Briefing on the duty issue was particularly necessary here. Mr. Leopold raises a novel mandamus issue. *See, e.g.*, *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 996 (D.C. Cir. 2021) (Henderson, J., concurring in judgment) ("We have never applied the second-step balancing test to a common law right of access claim seeking non-judicial records."). And courts have taken differing approaches when it comes to determining whether the decision to provide access to a public document is ministerial or discretionary.

Sometimes the driving factor is the substantive basis for relief. *Compare, e.g., Booth v. Mitchell*, 176 S.E. 396, 399 (Ga. 1934) (where court clerk had discretion to allow inspection of records under the relevant statute, duty was discretionary rather than ministerial), *and Fla. Soc. of Newspaper Eds., Inc. v. Fla. Pub. Serv. Comm'n*, 543 So. 2d 1262, 1265 (Fla. Dist. Ct. App. 1989) (an official's determination whether disclosure is precluded due to statutory exemption for confidential proprietary information is

discretionary, not ministerial), *with Pressman v. Elgin*, 50 A.2d 560, 563 (Md. 1947) (where the legislature has mandated that specific records be kept open to public inspection, disclosure of those records is a "ministerial duty"), *and Womack Newspapers, Inc. v. Town of Kitty Hawk ex rel. Kitty Hawk Town Council*, 639 S.E.2d 96, 105 (N.C. App. 2007) (where the state Public Records Act has been held to apply to subject documents, the town had no discretion as to whether to release the record and mandamus would lie).

Other times the conclusion is based on the types of records involved or the precise relief sought. *See* 55 C.J.S. Mandamus § 293 (2021) (while "[m]andamus is the proper remedy to compel compliance with public records law," it is also true that "[a] requester cannot obtain a writ of mandamus for public records where the writ would require the performance of a discretionary duty, rather than a ministerial duty"); *but see Mathews v. Pyle*, 251 P.2d 893, 897 (Ariz. 1952) (trial court has duty to review records to determine whether they are confidential or whether disclosure would be detrimental to the interests of the state, and if neither, it should grant mandamus; no mention of ministerial versus discretionary issue); *State ex rel. Youmans v. Owens*, 137 N.W.2d 470, 476 (Wis. 1965) (same), *reh'g denied and opinion modified*, 139 N.W.2d 241 (Wis. 1966); *Sheridan Newspapers, Inc. v. City of Sheridan*, 660 P.2d 785, 798 (Wyo. 1983) (whether public interest in disclosure outweighs the harms from disclosure is a question of law to be determined by the trial court) (citing *Newspapers, Inc. v. Breier*, 279 N.W.2d 179, 184 (Wis. 1979)).

In all events, there are sound arguments cutting in all directions. We express no views on these issues, other than to observe that mandamus petitioners have the burden to address this jurisdictional prerequisite, like all others, in their petitions

and briefs in the future. With that, we turn to Mr. Leopold's arguments.

## A.

We begin with Mr. Leopold's claims rooted in the common law right to access public documents recognized in *Nixon v. Warner Communications, Inc*. *See* 435 U.S. at 597. At issue here are two categories of documents. In one category are thirty-six written directives that the Capitol Police argues are not public documents as defined in *Washington Legal Foundation II*. In the other category are documents held by the Capitol Police (another sixty-five directives) and reports and audits prepared by the Inspector General, all of which have been designated as security information under 2 U.S.C. § 1979. Though the parties agree that Section 1979 supplants the common law right to access, Mr. Leopold persists that these directives—either in full or in part—are not "security information." Without Section 1979 as a barrier, the common law right remains, Mr. Leopold posits. We independently analyze each category. *See Washington Legal Found. I*, 17 F.3d at 1452 (explaining that each category of document requested must be analyzed to determine whether it is "reasonably likely to contain publicly accessible documents").

## 1.

Mr. Leopold invokes a common law right of access to thirty-six directives that the Capitol Police have not designated as "security information" under 2 U.S.C. § 1979. To prevail on this mandamus claim, Mr. Leopold must show that he has "no *other* adequate means to attain" these directives. *Cheney*, 542 U.S. at 380 (emphasis added). That implies, of course, that his asserted means of obtaining the records—the common law right of access—are themselves adequate. So, if the directives are not public documents, it is inconceivable that any

mandamus could issue—Mr. Leopold would have no right to the records at all. *Washington Legal Found. I*, 17 F.3d at 1451 ("in determining whether a public right of access exists a court should first decide whether the document sought is a 'public record'").

In *Washington Legal Foundation II*, we defined a public record as "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." 89 F.3d at 905. We further explained that this definition was "narrow enough to avoid the necessity for judicial application of the second-step balancing test to documents that are preliminary, advisory, or, for one reason or another, do not eventuate in any official action or decision being taken." *Id.*

Mr. Leopold argues that a straightforward application of *Washington Legal Foundation II* proves that these directives are public documents. That is because these directives are the Capitol Police's official policies and cover myriad topics (from "Bias-Based Profiling" and "Search of Persons" to "Acceptable Use of the Internet, Email, and Information Technology Equipment," and "Employee Use of Electronic Social Media," *see* J.A. 28). As such, they record an official action, decision, or other matter of legal significance.

In response, the Capitol Police rests on the District Court's reasoning, which rejected Mr. Leopold's application of *Washington Legal Foundation II*. In the District Court's view, these directives are "preliminary material" and an "advisory guidance that may only eventually lead to an official action." *Leopold v. Manger*, 630 F. Supp. 3d 71, 84 (D.D.C. 2022). That is because, from the District Court's perspective, these directives do not "memorialize or record any official action,"

but concern internal "administrative matters." *Id.* (first quoting *Pentagen Techs. Int'l Ltd. v. Comm. on Appropriations*, 20 F. Supp. 2d 41, 45 (D.D.C. 1998); and then quoting *Washington Legal Found. II*, 89 F.3d at 900).

We disagree. As final policies, these directives memorialize an official action (the creation and adoption of a policy) and are public documents under *Washington Legal Foundation II*. Take the directive on "Search of Persons" as an example. J.A. 28. To construe this directive as merely an advisory guidance that officers can consult before determining whether to comply is mistaken. This policy operates to ensure that the Capitol Police, and its officers, are behaving in a manner that is consistent with the Constitution. And as Mr. Leopold points out, a Capitol Police officer's failure to comply with the directives, may lead to disciplinary action. *See, e.g.*, *Moran v. U.S. Capitol Police*, 82 F. Supp. 3d 117, 126 (D.D.C. 2015).

Nor is it the case that these directives "may only eventually lead to an official action." *Leopold*, 630 F. Supp. 3d at 84. True enough, policy documents are forward-facing, but so are newly enacted, and unenforced, statutes. We would not limit official actions to those that enforce a statute—rather, we would recognize that a statute is, itself, an official action that marks the end of a legislative process. We think that analogy is apt here: the adoption of a policy marks the end of an official process; thus, these directives—as binding policies—are official actions. Therefore, we conclude that the District Court erred when it concluded that the thirty-six directives were not public documents.

Because we hold that these directives are public records, we turn to Mr. Leopold's next argument: whether we should remand the case so that the District Court can reconduct the

balancing test with the aid of a *Vaughn* index. Once again, Mr. Leopold raises strong points.

*Washington Legal Foundation I* made clear that the balancing inquiry is a "precise," not "an abstract inquiry." 17 F.3d at 1452. It also empowered district courts to order a *Vaughn* index when there is ambiguity as to whether the common law right should extend to the records sought. *Id.* And here, there are directives covering a wide range of topics, including substantive law enforcement polices ("Bias-Based Profiling, "Handling Interactions with Transgender Individuals," or "Communicating With the Deaf/Hard of Hearing during Arrest, Stops, and Contacts," to name a few). J.A. 28. But the District Court focused on solely the "administrative and personnel-related" directives. *Leopold*, 630 F. Supp. 3d. at 85. Thus, it appears that the District Court failed to analyze "each category of document requested," and rejected Mr. Leopold's request "without knowing precisely what records were at issue." *Washington Legal Found. I*, 17 F.3d at 1452. So we take Mr. Leopold's point that a *Vaughn* index likely would have aided the District Court's analysis. *See also Washington Legal Found. II*, 89 F.3d at 906 (acknowledging "the benefit of a comprehensive index of the specific documents at issue").

But we go no further. As we have already explained, Mr. Leopold failed to brief a necessary element to receive the extraordinary remedy that he seeks: that the Capitol Police abridged a "clear and indisputable" duty to provide access to these records. *Ferriero*, 60 F.4th at 714–15 (cleaned up); *see also Lovitky v. Trump*, 949 F.3d 753, 759–60 (D.C. Cir. 2020) (explaining that the petitioner has the burden of establishing jurisdiction); *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) ("Our consideration of any and all mandamus actions starts from the premise that the issuance of the writ is

an extraordinary remedy, reserved for the most transparent violations of a clear duty to act."). Accordingly, Mr. Leopold's request is one of the many that have been denied even though the petitioner advances an argument "packing substantial force, [but] is not clearly mandated by statutory authority or case law." *Ferriero*, 60 F.4th at 714–15 (quoting *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020) (quoting *In re Khadr*, 823 F.3d 92, 99–100 (D.C. Cir. 2016)) (internal quotation marks and alterations omitted).

Without the benefit of any briefing as to whether the Capitol Police has any clear and indisputable, non-discretionary duty, we have no choice but to affirm the District Court's dismissal of this suit. We cannot say that Mr. Leopold's right to relief is "clear and indisputable" when he does not say so himself. Again, courts take myriad approaches when asked to determine whether the duty to provide access to records is ministerial or discretionary, and we have yet to decide this question. If Mr. Leopold chooses to refile his claim, he must identify the clear and indisputable non-discretionary duty that the Capitol Police are legally required to fulfill. His failure to make the necessary arguments here means that we do not have jurisdiction to issue the requested injunction.

**2.**

We now turn to Mr. Leopold's argument that he has a common law right to access documents that the government has designated as "security information" under 2 U.S.C. § 1979. This statute forbids the release of "any security information in the possession of the Capitol Police … to another entity, including an individual" without the Capitol Police Board's approval. 2 U.S.C. § 1979(b). Section 1979 defines "security information" as information that:

(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and

(2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response.

*Id.* § 1979(a). Applied here, a Capitol Police document review team designated sixty-five written directives as "security information," *see* J.A. 23, and the Capitol Police Board, in Order 17.16 designated all audits and reports prepared by the Capitol Police Inspector General as "security information," *see* J.A. 17. Nonetheless, Mr. Leopold argues that there is insufficient evidence in the record that supports designating these documents as "security information."

Mr. Leopold does not dispute that the Capitol Police need not—indeed, may not—release information that is properly designated as "security information" under 2 U.S.C. § 1979. In his view, however, Section 1979 applies to only "security information," but the Capitol Police and Inspector General are withholding entire documents. And to the extent that the documents contain security information, he argues, the common law right of access requires the Capitol Police and Inspector General to release the portions of these documents that do not contain security information.

But it is far from clear what this Section 1979-specific argument achieves. Even if we were to conclude that designating entire documents as "security information" exceeds the authority provided under Section 1979, Mr.

Leopold would still need to show that the Capitol Police have a clear, indisputable, and ministerial duty to segregate the portions of the documents that are not security information. To the extent that duty exists, it comes from the common law right of access. So he would also have to prove that the common law right to public access extends to a document that contains non-public information, but somehow has public portions, which are accessible. *But see Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (recognizing that the right to access public documents does not extend to records that "have 'traditionally been kept secret for important policy reasons'") (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)); *In re WP Co.*, 201 F. Supp. 3d 109, 128 (D.D.C. 2016).

The pathway to the necessary conclusions is not intuitive. It is also unbriefed even though necessary to invoke mandamus jurisdiction. Thus, we reject Mr. Leopold's request for a remand to the District Court where the government would be ordered to segregate and disclose those portions of the withheld documents that do not contain security information. We accordingly affirm the dismissal of his common law claim as to these sixty-five directives and the withheld reports and audits prepared by the Inspector General.

## B.

Finally, we turn to Mr. Leopold's statutory claim. Mr. Leopold also seeks mandamus-style relief under Section 4 of the Inspector General Act, as it requires an Inspector General to publish all documents issuing a "recommendation for corrective action … on the website of the Office of the Inspector General." 5 U.S.C. § 404(e)(1)(C). Mr. Leopold argues that this provision of the Inspector General Act governs

the Inspector General of the Capitol Police under 2 U.S.C. § 1909(c)(1).  It provides:

> The Inspector General shall carry out the same duties and responsibilities with respect to the United States Capitol Police as an Inspector General of an establishment carries out with respect to an establishment under section 404 of Title 5, under the same terms and conditions which apply under such section.  *Id.*

Applied here, Mr. Leopold argues that the Inspector General of the Capitol Police has breached his "clear duty" to publish all audits and reports that recommend corrective action.  Even if publishing audits on the website is a ministerial duty, the conclusion that the failure to publish these reports breached this duty is not as straightforward as Mr. Leopold suggests.  That is because when Congress enacted Section 1909(c)(1), the Inspector General Act did not include the public posting requirement that Mr. Leopold seeks to apply today.  Mr. Leopold is correct only if Section 1909(c)(1) dynamically incorporates all amendments to the Inspector General Act absent congressional action.

Mr. Leopold's reading, the Capitol Police responds, is foreclosed by *Jam v. International Finance Corporation*, 586 U.S. 199 (2019).  There, the Court explained that when courts rely on "the reference canon … to harmonize a statute with an external body of law," the rule is "a statute that refers to another statute by specific title or section number in effect cuts and pastes the referenced statute as it existed when the referring statute was enacted, without any subsequent amendments."  *Id.* at 209–10.  Applied here, Section 1909(c)(1), which directly references "section 404 of Title 5,"

would not incorporate Section 404's subsequent amendments, i.e., the posting requirement.

We need not resolve the parties' disagreement on whether *Jam* and the reference canon apply because Mr. Leopold's argument fails on its own terms. Reading Section 1909 dynamically to incorporate the public posting requirement, the government directs us to Section 404(e)(2) of the Inspector General Act: "Nothing in this subsection shall be construed as authorizing an Inspector General to publicly disclose information otherwise prohibited from disclosure by law." 5 U.S.C. § 404(e)(2). And recall that in Order 17.16, the Capitol Police Board designated all reports and audits prepared by the Capitol Police Inspector General as "security information" under 2 U.S.C. § 1979. Although Mr. Leopold resisted the conclusion that Order 17.16 is "law" at oral argument, he did not present this counterargument in his reply brief. Oral Arg. 23:45–23:58. Therefore, the argument is conceded, *see Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997), and we conclude that Section 404(e)(2) forbade the Inspector General from publishing the audits and reports that Mr. Leopold seeks.

\* \* \*

In conclusion, we affirm the District Court's dismissal on each claim without prejudice. Thus, Mr. Leopold is free to refile his complaint with the requisite allegations to satisfy the mandamus standard if he so desires and if he plausibly believes that he can prove those allegations.

*So ordered.*